UNITED STATES of America, Appellee,

v.

**Kermit Oris BEAR STOPS, Appellant.**

No. 92–3125.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 17, 1993.

Decided July 6, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 15, 1993.

Timothy M. Engel, Pierre, SD, argued, for appellant.

Mikal G. Hanson, Pierre, SD, argued (Kevin V. Schieffer, Sioux Falls, SD, and Mikal Hanson, Pierre, SD, on the brief) for appellee.

Before BOWMAN, WOLLMAN, and HANSEN, Circuit Judges.

HANSEN, Circuit Judge.

Kermit Oris Bear Stops appeals his conviction of aggravated sexual abuse of P.M., in violation of 18 U.S.C. §§ 2241(c) and 2245(2)(A) (count I); his conviction of aggravated sexual abuse of his "son,"[1] B.B., in violation of 18 U.S.C. §§ 2241(c) and 2245(2)(A) (count II); and his conviction of abusive sexual contact with B.B., in violation of 18 U.S.C. §§ 2244(a)(1), 2241(c), ·and 2245(3) (count III). Bear Stops challenges several evidentiary rulings made during the seven-day trial and claims that the district court erred in refusing to declare a mistrial. We reverse the conviction of Bear Stops on count I of the indictment and affirm the conviction of Bear Stops on counts II and III.

## I.

Bear Stops lived with T.M. and her son, P.M., periodically from approximately 1984 until February of 1990. During this time, B.B. was born. Depending on the state of Bear Stops and T.M's unstable relationship, T.M. and her children, P.M., B.B., and a younger daughter, S.B., lived either in Fort

---

1. Bear Stops testified that until the time of trial he believed that B.B. was his son. Trial transcript (Tr.) 668. B.B. referred to Bear Stops as his "dad" during trial. Tr. 93–102.

Yates, North Dakota, or in the Red Scaffold/Cherry Creek area on the Cheyenne River Indian reservation in South Dakota. Bear Stops's family lived in the Red Scaffold/Cherry Creek area, and T.M.'s parents lived in Fort Yates.

In September of 1989, P.M. was living with his grandparents in Fort Yates. When doing dishes by the sink with his grandmother, P.M. told her that he had been sexually abused by Bear Stops, and she then relayed this information to T.M. T.M. confronted Bear Stops and a fight ensued. T.M. left Bear Stops, taking B.B. with her, and went to stay in a woman's shelter in South Dakota. Once they were no longer living with Bear Stops, B.B. told T.M. that Bear Stops had sexually abused him also.

Bear Stops was subsequently charged in count I of the indictment with knowingly engaging in a sexual act, specifically contact between the penis and anus, with P.M. at Red Scaffold on or about April 3, 1988, when P.M. was six years old. In count II, Bear Stops was also charged with knowingly engaging in a sexual act, specifically contact between the penis and anus, with B.B. at Red Scaffold. In count III, the indictment alleged that Bear Stops knowingly caused B.B. to engage in sexual contact, specifically intentional touching of the child's genitalia, groin, anus, and inner thigh with the intent to abuse, humiliate, harass, and degrade B.B., and to arouse and gratify defendant's sexual desire, at Red Scaffold. B.B. was approximately four years old at the time of the crimes charged in counts II and III.

At trial the government submitted evidence to prove count I. The child victim P.M. testified, as did his mother and grandparents, a psychologist, social workers, an elementary school counselor, and an official who investigated the case. Expert testimony was presented of the symptoms exhibited by a child who has been the victim of child abuse. Bear Stops denied that he sexually assaulted P.M., presented an alibi defense for the few days surrounding the approximate date listed in the indictment, introduced testimony demonstrating inconsistencies between the description of the assault given by P.M., and attempted to submit evidence re-

garding prior sexual assaults of P.M. by other persons. The evidence regarding the prior sexual assaults was largely excluded by the district court. With respect to counts II and III, the government presented the testimony of the child victim B.B., as well as the testimony of his mother, of a social worker, and of a pediatrician. The expert testimony presented regarding the symptoms of a sexually abused child also pertained to the counts involving B.B. Bear Stops denied the allegations with respect to B.B.

Because the evidentiary issues and issue of the denial of the motion for mistrial are closely interwoven with the facts, the remaining factual background will be addressed as the facts arise in the discussion of the issues. Bear Stops raises several evidentiary issues, most challenging the exclusion of evidence indicating that P.M. had been assaulted by other persons. Bear Stops also argues that the district court erred when it refused to declare a mistrial.

## II.

Bear Stops moved pursuant to Federal Rule of Evidence 412 to introduce evidence of sexual abuse of P.M. committed by persons other than Bear Stops. Bear Stops made numerous offers of proof during trial regarding that evidence. The district court excluded the evidence in large part based upon Federal Rule of Evidence 403. Bear Stops's motion for mistrial because of the exclusion was denied. On appeal, Bear Stops argues that the exclusion of such evidence violated his Sixth Amendment right to effective confrontation and cross-examination and his due process rights under the Fifth Amendment. Bear Stops specifically argues that the evidence of sexual abuse of P.M. by persons other than Bear Stops is constitutionally required to be admitted (1) to provide an alternative explanation for the characteristics identified as frequently observed in sexually abused children and exhibited by P.M.; (2) to provide an alternative explanation to testimony regarding P.M.'s alleged bloody underwear; (3) to establish an alternative source for P.M.'s sexual knowledge; (4) to challenge the accuracy of the child's identification of the perpetrator; and (5) to

challenge the credibility of P.M. The government contends that Rules 403 and 412 precluded the admission of such evidence. We agree with Bear Stops but only for the first two reasons.

## A.

Bear Stops offered uncontroverted evidence of an incident in 1988, when P.M. was six years old and staying with Bear Stops's sister, Delores Cook, at Red Scaffold, South Dakota, in which P.M. was taken under a bridge and sexually assaulted, specifically anal penetration by the penis, by three older boys ages nine, ten, and twelve. The assault by the three older boys occurred approximately during the same time period as count I's alleged sexual abuse by Bear Stops.

At trial, Debra Baune, a licensed clinical social worker, testified that sexually abused children often exhibit regressive behaviors, such as bed wetting after being potty trained, hyperactivity, aggressiveness, and nightmares, and the children may also act out sexually as a result of the emotional trauma caused by the abuse. Trial transcript (Tr.) 118–20. Dr. Bean, a licensed psychiatrist, testified likewise. Tr. 788–89. P.M.'s grandparents and mother each testified that P.M. had shown such behaviors after he had been in Red Scaffold. Tr. 240–41, 249, 251, 279–80, 291, 354–55. Bear Stops asserts that because of the government's evidence that P.M. exhibited the symptoms of a sexually abused child, the jury determined that P.M. must have been sexually abused. Bear Stops concludes that the jury assumed that the perpetrator of the sexual abuse must have been Bear Stops unless he can put forth an alternative explanation for P.M.'s symptoms by submitting evidence of the uncontroverted sexual assault inflicted by the three boys. Bear Stops argues that the exclusion of this evidence denied him his constitutional right to a fair trial.

"The Sixth Amendment right to confrontation and the Fifth Amendment right to due process of law require only that the accused be permitted to introduce all relevant and admissible evidence." *United States v. Kasto,* 584 F.2d 268, 272 (8th Cir.1978), *cert.* *denied,* 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979). *See Faretta v. California,* 422 U.S. 806, 818, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975) ("In short, the [Sixth] Amendment constitutionalizes the right in an adversary criminal trial to make a defense as we know it." (citation omitted)). The Supreme Court has stated that "the right to present relevant testimony is not without limitation." *Michigan v. Lucas,* — U.S. —, —, 111 S.Ct. 1743, 1746, 114 L.Ed.2d 205 (1991).

> "The right 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'" *Rock v. Arkansas,* 483 U.S. 44, 55 [107 S.Ct. 2704, 2711, 97 L.Ed.2d 37] (1987), quoting *Chambers v. Mississippi,* 410 U.S. 284, 295 [93 S.Ct. 1038, 1046, 35 L.Ed.2d 297] (1973). We have explained, for example, that "trial judges retain wide latitude" to limit reasonably a criminal defendant's right to cross-examine a witness "based on concerns about, among other things, harassment, prejudice, confusion of issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall,* 475 U.S. 673, 679 [106 S.Ct. 1431, 1435, 89 L.Ed.2d 674] (1986).

*Lucas,* — U.S. at —, 111 S.Ct. at 1746. "Restrictions on criminal defendant's rights to confront adverse witnesses and to present evidence 'may not be arbitrary or disproportionate to the purposes they are designed to serve.'" *Id.,* — U.S. at —, at 1747 (quoting *Rock v. Arkansas,* 483 U.S. at 56, 107 S.Ct. at 2711).

The district court acknowledged that the proffered evidence, when offered to establish an alternative explanation for why P.M. exhibited the behavioral manifestations of a sexually abused child, was relevant and probative on that point. Fed.R.Evid. 402. We agree. This point was an important one at trial because little physical evidence of the alleged sexual assault was presented and because P.M. had been somewhat inconsistent in describing the details regarding the alleged assault or assaults by Bear Stops. With the proof that P.M. exhibited the symptoms of a sexually abused child and without

an alternative explanation, the jury may have been led directly to the conclusion that Bear Stops was the perpetrator of the sexual abuse and convicted him on count I largely on that basis.

The district court limited the admission of the evidence regarding the incident with the three older boys relying on Federal Rules of Evidence 403 and 412. Rule 412 generally prohibits "evidence of an alleged victim's past sexual behavior" with an exception for evidence that is "constitutionally required."[2] Fed.R.Evid. 412(b)(1). The district court stated that because an alternative explanation for why P.M. exhibited the symptoms of a sexually abused child potentially exists due to the sexual assault by the three older boys, excluding that evidence in its entirety presents a "substantial potential for a conviction based on erroneous reasoning." *United States v. Bear Stops*, Crim. No. 91–30042–01, slip op. at 11 (D.S.D. June 15, 1992) (memorandum opinion) (footnote excluded). In our judgment, the fact that P.M. was sexually assaulted by the three older boys was constitutionally required to be admitted.

The district court, however, rigorously limited the admission of the evidence after carefully balancing the probative value against its negative effects. Rule 403 permits the exclusion of relevant evidence when its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The district court expressed its grave concern about subjecting P.M., a child who has been victimized by other persons in a sexual manner, to further difficult questioning regarding such sensitive matters. The court stated that the "inevitable effect of admitting

such evidence" would be the harassment of P.M., albeit unintentional, and an "unwarranted intrusion into his private life—effects that Rule 412 was designed to prevent." *Id.* at 14 (citations and footnote excluded). The court further expressed the concern that the incident with the three older boys was a collateral matter and that evidence regarding the incident may confuse and distract the jury and could be misused by the jury. *Id.* at 15 (citation omitted).

We share the concerns expressed by the district court and determine that the "restrictions on criminal defendant's rights to confront adverse witnesses and to present evidence" in this case were not arbitrary. *Lucas*, —— U.S. at ——, 111 S.Ct. at 1747 (quoting *Rock v. Arkansas*, 483 U.S. at 56, 107 S.Ct. at 2711). We do conclude, however, that the restrictions placed on Bear Stops's rights to confront adverse witnesses and to present evidence were " 'disproportionate to the purposes they are designed to serve.' " *Id.* (quoting *Rock v. Arkansas*, 483 U.S. at 56, 107 S.Ct. at 2711). As noted by the district court, the admission of evidence may be limited, in accordance with the constitution, to only a sanitized version of the sexual assault sufficient to effectuate the purpose for which the evidence was offered. *See United States v. Payne*, 944 F.2d 1458, 1469 (9th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1598, 118 L.Ed.2d 313 (1992). The version allowed in this case, however, was so sanitized that it was insufficient to support the purpose for which it was offered. During the seven-day trial, the only evidence admitted pertaining to the sexual assault by the three older boys was the testimony of P.M.'s grandmother, E.M.; the testimony of Dr. Peter C. Peterson, a clinical psychologist in North Dakota who treated P.M.; and the

---

**2.** Another exception is when the evidence is of past sexual behavior with persons other than the accused and is offered by the accused on the issue of whether the accused was or was not the source of injury. Fed.R.Evid. 412(b)(2)(A). This court has previously found that the "Rule 412's injury requirement exception does not apply to emotional injuries unaccompanied by cognizable physical consequence." *United States v. Shaw*, 824 F.2d 601, 603 n. 2 (8th Cir.1987), *cert. denied*, 484 U.S. 1068, 108 S.Ct. 1033, 98 L.Ed.2d 997 (1988). Bear Stops requests that the panel

overrule *Shaw* and find the "injury" to P.M. to fall within this exception. We decline this invitation. One panel of the circuit may not overrule a decision issued by another panel of the court. *United States v. Brelsford*, 982 F.2d 269, 272 n. 5 (8th Cir.1992) (citation omitted). Moreover, we find the other exception permitting the admission of such evidence when "constitutionally required" to be applicable. The constitutional argument was not raised in *Shaw* and was expressly not considered by the court in *Shaw*. 824 F.2d at 606 n. 6.

testimony of Bear Stops's expert witness, Dr. Bean.

On the second day of trial during the grandmother's testimony on direct examination, the following exchange took place:

Q: Do you ever bring up the subject [of sexual abuse] with him [P.M.], or how does it come up?

A [by E.M.]: Well, the first time at the sink, well, I brought up the subject. But, then, to my knowledge, that case—the social worker in Eagle Butte told me that he [P.M.] was molested by three older boys. Then that's when—that's when he told me that Oris [Bear Stops] got to him first before them three boys.

Q: And were you aware of whether that first—or, that incident with the three boys was investigated?

A: I wasn't aware of it until I talked to the social worker and he [P.M.] was turned over to me.

Tr. 249. Also on that same day of trial, Dr. Peterson testified on cross-examination that one of the reasons that P.M. was brought to him for treatment was because P.M. had been sexually acting out. Tr. 202–03.

Q: Did they tell you with whom he was sexually acting out?

A: My recollection was that—now, this didn't come from the [M.]s. This came through hospital staff and input from school staff, that he was inappropriately touching other students and, apparently, there had been some of that going the other way.

Q: What do you mean by that?

A: My understanding was that he was allegedly molested by some other kids.

Tr. 203. On the final day of trial, a deposition of Dr. Bean, a licensed psychiatrist, was admitted as testimony of an expert witness for Bear Stops.

Q: ... I'm going to ask a hypothetical now. Assume for the purposes of this question that a six-year-old boy was the subject of a violent sexual assault, including sodomy, perpetrated by three boys between the ages of 10 and 13 years. Would that six-year-old boy be likely or not be likely to exhibit the symptoms you described?

A: Well, all things being equally would be likely to show symptomatology of some traumatic event. And that would be a likely traumatic event that would result in the symptoms that we have previously discussed.

Q: Doctor, I need to ask another hypothetical. For the purposes of this question assume that a six-year-old boy is sexually assaulted, which assault includes sodomy, by three older and stronger boys. Now, would that six-year-old boy be likely or not be likely to exhibit the symptoms that you have described?

A: He would be likely to exhibit symptoms also.

Q: Okay. And one final hypothetical, Doctor. Assume a six-year-old boy is sexually molested by three boys. Based on those facts are you able to form an opinion as to whether or not that six-year-old boy would be likely to exhibit the symptoms you have described?

A: I guess I'm not certain what you mean by sexual molestation at this time. Do you mean with sodomy again? Is that the same hypothetical?

Q: Those are the only facts I can give you for this hypothetical, Doctor, and I need to have you tell me if you can form an opinion based on those?

A: Well, it really depends on the nature of the sexual molestation. If it includes severe physical abuse with sexual aggressive activity including sodomy, then, again, my answer is very likely. If the sexual molestation is very minor the child may not show symptomatology.

Really, the nature and degree of symptom formation in children and adults following emotionally traumatic events is related to the degree, intensity, duration of these events. That is, the greater the degree the greater duration, the greater the intensity the greater the symptom findings.

Tr. 789–91.

As demonstrated by Dr. Bean's response to the last hypothetical, the testimony of

E.M. and of Dr. Peterson regarding the assault by the three older boys was too vague to provide even a potential alternative explanation for why P.M. exhibited the symptoms of a sexually abused child. No information was before the jury that the assault by the three older boys was the same type of sexual abuse as allegedly perpetrated by Bear Stops. In fact, Dr. Peterson's testimony seems to imply the "sexual molestation" by the three older boys was only inappropriate touching rather than anal penetration by a penis. The jury was also not presented with any evidence indicating that the events occurred approximately during the same time period as the alleged assault by Bear Stops. Without sufficient information to determine whether a potential alternative explanation for P.M.'s behavior existed, the serious risk of a conviction on erroneous reasoning identified by the trial court remained. The basic information of the undisputed assault by the three boys (the type of sexual assault and the time period during which it occurred) was constitutionally required for Bear Stops to receive a fair trial.

The district court's concerns regarding the admission of the evidence were valid. Restricting the testimony regarding the sexual assault by the three boys to only the references volunteered by the grandmother and Dr. Peterson, and the hypotheticals asked of Dr. Bean, was, however, disproportionate to those concerns. Because the evidence about the incident with the three older boys was uncontroverted, the potential for jury confusion and for a distracting "mini-trial" about the event was minimal. To avoid the intrusion on P.M.'s privacy, testimony about the basic facts of the incident could have been introduced through P.M.'s mother who discovered the sexual assault by the three older boys and stopped it, or through any other witness other than P.M. who had knowledge about it. Because of both its relevance and its uncontroverted nature, the evidence would also be a likely candidate for stipulation.

Accordingly, we hold that the district court abused its discretion and erred when it refused to admit the basic factual details (time, place, age and sex of the perpetrators, the type of sexual assault, etc.) when that evidence was offered to provide an alternative explanation for the prosecution's persuasive evidence about P.M.'s behavioral manifestations of a sexually abused child.

## B.

■ Bear Stops argues that proffered testimony regarding alleged bloody underwear of P.M. should not have been excluded. At trial, the child victim, P.M., after describing an incident of sexual abuse by Bear Stops, testified as follows:

Q: All right. And can you tell the jury before that happened what you were doing, or where you were at, or some things that happened right before that?

A: I was at Delores'.

Q: You were at Delores'. And that is Delores Bear Stops [Cook].?

A: (Nodded head up-and-down).

Tr. 63. P.M. also testified that Delores told P.M. "not to tell" about the sexual assault by Bear Stops. Tr. 72. Agent McConaghy testified that he interviewed P.M. and P.M. described the sexual assault by Bear Stops.

Q: Did [P.M.] indicate what had occurred, what happened after that event?

A: He stated when Oris [Bear Stops] was done he had fallen asleep, when he woke up Oris was gone. He advised his rectum area was bleeding and there was blood coming from his rectum area. He advised that there was no one else being in the house he went to his Aunt Delores' which was close by and she washed him up, gave him a bath, and put him to sleep.

Tr. 405. Following her testimony about confronting Bear Stops regarding the alleged abuse, P.M.'s mother, T.M., testified as follows:

A: When [P.M.] stayed with Delores I went to her house and collected his clothing. And I found his shorts and they had blood on them.

Q: In what part of the shorts?

A: In the anal part.

Q: Did you say or do anything, or what was going through your mind at that time when you discovered that?

A: I had a feeling that something had happened to him.

Tr. 281. She testified that she asked P.M. about it but he would not talk about it. Tr. 282. In an offer of proof, Bear Stops sought permission to cross-examine T.M. about the incident involving the three older boys and to then call Kay Traversie, a social worker at State Social Services in South Dakota during the relevant times, to testify that the sexual abuse report she prepared indicates that T.M. reported finding P.M.'s underwear hidden at Cook's house and that T.M. associated it with the assault by the three older boys. Tr. 431–58.

The alleged bloody underwear is the only physical evidence of a sexual assault of P.M. The alleged sexual assault by Bear Stops and the uncontroverted sexual assault by the three older boys occurred in approximately the same time period. Absent any proof of the type of and the timing of the sexual assault by the three older boys, the jury likely concluded that the alleged bloody underwear could only be the result of sexual abuse of P.M. by Bear Stops. Precluding Bear Stops from cross-examining P.M.'s mother on this point and offering a potential alternative explanation for the bloody underwear was a denial of his Sixth Amendment right. Evidence regarding the facts of the sexual assault by the three older boys should have been admitted for the purpose of providing an alternative explanation for the bloody underwear. As explained in the preceding section, however, the district court may control the manner in which the testimony on this matter is presented and the amount of evidence introduced on the subject.

Because the basic evidence about the assault by the three older boys was constitutionally required, and its exclusion was not harmless error, the conviction of Bear Stops on count I must be reversed.

### C.

■ After careful review, we address the other evidentiary issues raised by appellant to the extent they inevitably will be raised in a new trial. We hold that the district court did not abuse its discretion in excluding evidence of sexual abuse of P.M. by persons other than Bear Stops when it was offered to show an alternative source of the child's sexual sophistication. *United States v. Torres,* 937 F.2d 1469, 1474 (9th Cir.1991) (evidence of past sexual conduct not admissible when the victim's testimony did not demonstrate any unusual knowledge of sexual techniques or nomenclature), *cert. denied,* —— U.S. ——, 112 S.Ct. 886, 116 L.Ed.2d 789 (1992); *United States v. St. Pierre,* 812 F.2d 417, 419 (8th Cir.1987). We conclude that the district court did not abuse its discretion by excluding the evidence of prior sexual behavior and assaults involving persons other than Bear Stops when offered for the purpose of challenging the accuracy of P.M.'s identification of Bear Stops as the perpetrator of the sexual assault at issue. *See United States v. DeNoyer,* 811 F.2d 436, 440 (8th Cir.1987). Finally, we hold that the district court did not abuse its discretion when it excluded evidence involving the incident with the three older boys that was offered for the purpose of impeaching the testimony of P.M.

### III.

Bear Stops raises several issues in arguing that the district court committed reversible error in denying his motion for mistrial. "The standard of review applicable to denial of a motion for mistrial is abuse of discretion." *United States v. Nelson,* 984 F.2d 894, 897 (8th Cir.1993) (citation omitted), *petition for cert. filed,* (U.S. May 3, 1993). Because of the resolution of the evidentiary issues regarding count I, involving P.M., we will only address those remaining issues that are necessary for the resolution of the appeal with respect to counts II and III, involving B.B.

■ Bear Stops argues the district court erred in excluding evidence of sexual contact between P.M. and B.B. that was offered to prove an alternative source of B.B.'s sexual knowledge. The testimony of B.B., however, was in age appropriate language regarding his alleged sexual assault by Bear Stops. Tr. 93–96. In addition, evidence was not offered indicating that the sexual acting out by P.M. towards B.B. was similar in nature to the

alleged sexual assault by Bear Stops. In fact, when counsel for Bear Stops asked B.B. if "anyone other than your dad ever put his pee pee in your butt?", the child responded "no." Furthermore, the jury heard evidence that P.M. acted out sexually toward his siblings, including B.B. specifically. Tr. 280, 291. We agree with the district court that evidence of sexual contact between a four-year-old boy and his six-year-old brother was probably not relevant and that any probative value it might have was outweighed by its negative effects. *See Torres*, 937 F.2d at 1474; *St. Pierre*, 812 F.2d at 419. Bear Stops's constitutional rights were not violated, and the district court did not abuse its discretion by excluding this evidence and denying the motion for mistrial on this basis.

Finally, Bear Stops argues that the alleged evidentiary errors directly pertaining to count I involving P.M. as the victim "spilled-over" to infect counts II and III, the counts involving the younger child, B.B. Because Bear Stops denies that he sexually abused either P.M. or B.B., his credibility is involved in all three counts. Therefore, Bear Stops asserts that the alleged errors directly involving count I also affect counts II and III because his credibility was impeached. We disagree.

The alleged errors in question all involve actual and alleged incidences of sexual abuse of P.M. Therefore, as Bear Stops appears to concede, these evidentiary issues are unique to P.M. and have no relevance to the counts involving B.B. beyond the general credibility of Bear Stops. We find the counts involving B.B. to be quite different from the one involving P.M. and the case against Bear Stops to be much stronger. Unlike with respect to P.M., there was no evidence of prior sexual abuse of B.B. (and no sexual experience beyond P.M. acting out sexually toward B.B.), and therefore, no valid basis existed to support an alternative explanation for why B.B. exhibited symptoms of a child who has been sexually abused. For the same reasons, any argument explaining an alternative source for B.B.'s sexual knowledge would be tenuous at best. There appeared to be no question that B.B. was able to identify his father with whom he had lived for approximately the first five years of his life. B.B.'s description of the alleged incidents with Bear Stops was consistent regardless of whether it was oral, acted out with anatomically correct dolls, or with pictures drawn on paper. Tr. 127–36, 140. B.B.'s allegation, the investigation of his allegations, and his treatment occurred largely in South Dakota and while P.M. was in North Dakota. Counts II and III involve a different victim and occurred at different times than involved in count I, and we will not presume that the jury did not properly consider each count independently. We hold that the district court did not abuse its discretion in denying the motion for mistrial on this basis.

## IV.

For the reasons stated above, we reverse the conviction of Bear Stops on count I of the indictment and affirm the conviction of Bear Stops on counts II and III. We remand the case for further proceedings consistent with this opinion. If the government elects not to retry Bear Stops on count I, or if upon retrial he is acquitted, we direct the district court to resentence Bear Stops on Counts II and III. The application of the Sentencing Guidelines multiple count grouping rules at the original sentencing resulted in a two-level increase in the offense level used to determine the guideline range, a situation not present when only counts II and III (which comprised a single group) are the only counts of conviction.