(177 P.3d 419)
No. 94,578

STATE OF KANSAS, *Appellee*, v. DARRELL D. JACKSON, *Appellant*.

—

Opinion filed February 29, 2008.

*Reid T. Nelson*, of Capital Appeals and Conflicts Appeals Office, of Topeka, for appellant.

*David E. Yoder*, county attorney, and *Paul J. Morrison*, attorney general, for appellee.

Before MARQUARDT, P.J., LEBEN, J., and KNUDSON, S.J.

LEBEN, J.: One of the most important rights in American criminal justice is the right to confront one's accuser. As a practical matter, that right depends upon the ability of the defendant—usually through an attorney—to cross-examine the witnesses who testify against him. Thus, an unreasonable limitation on the defendant's cross-examination of adverse witnesses violates the Confrontation Clause of the United States Constitution. *Olden v. Kentucky*, 488 U.S. 227, 231, 102 L. Ed. 2d 513, 109 S. Ct. 480 (1988).

Darrell Jackson claims that unreasonable restrictions on his attorney's cross-examination of the key witness against him led to his conviction on five counts of aggravated criminal sodomy and four counts of aggravated indecent liberties with a child. The district court did not allow Jackson's attorney to cross-examine the alleged victim about the nearly identical allegations of sexual assaults by other individuals against her during the same general time period. But the State's case included evidence and argument that the victim's behavior had worsened—presumably based on the assaults by Jackson—during and after the time period that he had assaulted her. In that context, Jackson's right to confront the witnesses against him was violated by precluding cross-examination about similar assaults as other potential causes of her behavioral changes. Because we are unable to say beyond a reasonable doubt that the trial result would have been the same had this additional evidence been heard by the jury, we must reverse Jackson's convictions.

*Jackson's Assaults Were Alleged to Have Occurred from July 1999 until January 2002, But Other Charges of Sexual Misconduct Against A.C. Involved Acts That Occurred During the Same Time Period.*

Jackson's crimes were alleged to have occurred between July 1999 and January 2002. The alleged victim in all of the charges was

A.C., a girl who was between 10 and 12 years old when the crimes were alleged to have occurred. She was 15 at the time of trial.

Jackson was a family friend, and he had acted generally as a babysitter for A.C. during the time at issue. The State's allegations generally were that Jackson licked A.C.'s vagina and had A.C. masturbate him. A.C. testified that such acts had occurred more than 50 times. A.C. testified that Jackson sometimes gave her money or presents; both A.C. and her mother also testified that Jackson had threatened A.C. Jackson was convicted of five counts of aggravated criminal sodomy and four counts of aggravated indecent liberties with a child; the jury acquitted him of one count of aggravated indecent liberties.

During the time period of these charges, A.C. was twice placed into the custody of the Kansas Department of Social and Rehabilitation Services (SRS). Her mother contacted SRS and told them A.C. was uncontrollable in 1999; as a result, A.C. was in a foster home under SRS care for about 3 months that summer. A.C.'s mother contacted SRS again in February 2002, and A.C. was again placed into SRS custody. While she was still in SRS custody, A.C. first raised allegations against Jackson in September 2002.

There also was evidence of other sexual assaults against A.C. during the same time period Jackson's crimes were alleged to have taken place. A.C. accused two other juveniles, Joseph H. and Travis S., of licking her vagina in incidents occurring between August 2000 and August 2001. Both Joseph and Travis apparently admitted those acts in court proceedings; both were adjudicated juvenile offenders for crimes against A.C. (aggravated criminal sodomy by Joseph and sexual battery by Travis). A.C. accused her stepbrother of attempting to have sex with her; SRS substantiated those allegations, but apparently no criminal charges were brought against the stepbrother. The stepbrother ultimately testified that he and A.C. had engaged in oral sex about 1 year before the November 2002 trial. A.C. also claimed that another man had sexually assaulted her. He was an employee at a facility A.C. was placed in while in SRS custody in 2002. An SRS investigation found no truth to those allegations, and A.C. eventually recanted them.

*The District Court Ruled Some of the Prior Sexual Misconduct
Against A.C. Inadmissible under the Rape-Shield Law.*

Before trial, the State filed a motion in limine to exclude testimony about any prior sexual conduct involving A.C. and anyone but Jackson, citing the Kansas rape-shield law, K.S.A. 21-3525. The district court held a hearing on this motion after jury selection but without the jury present. Jackson's attorney said he would not seek to introduce evidence about the allegations against Joseph and Travis unless the State's presentation suggested that A.C.'s knowledge of sexual matters must have come from Jackson. However, Jackson's attorney wished to present evidence about the false allegations of sexual abuse by the SRS employee. The district court held that the rape-shield law prevented the admission of evidence related to prior sexual abuse against A.C. by anyone but Jackson, but it held that evidence about the false allegations against the SRS employee could be presented because they were not related to actual sexual conduct involving A.C. Thus, the rape-shield law did not apply to the latter conduct.

After the court granted the State's motion in limine, Jackson's counsel said he also wanted to cross-examine A.C. about her statement at the preliminary hearing that no one other than Jackson had ever touched her inappropriately. Defense counsel argued that he should be allowed to impeach A.C. based on the conflict between her statement to a police officer that no one other than Jackson had touched her inappropriately and Joseph's and Travis's convictions for doing so. The court ruled that the defense could raise this issue—outside the jury's presence—if the State's presentation made it relevant.

During the trial, Jackson's attorney sought to cross-examine A.C. concerning the Joseph and Travis allegations, as well as the allegation against A.C.'s stepbrother. Jackson's attorney argued that they had become relevant after the State suggested that A.C.'s behavior had deteriorated because of the abuse by Jackson and because the State presented evidence that A.C. feared returning home because Jackson remained in the community. Jackson argued that these allegations opened the door to cross-examination about

other abuse against A.C. that might have caused the same bad behavior or fear of returning to the community.

The district court allowed cross-examination regarding the allegation against the stepbrother apparently because it might undermine the claim that she feared leaving SRS custody and going home due to Jackson's presence nearby, even though her stepbrother still lived in the home. But the court denied admission of evidence regarding Joseph and Travis. The court cited the rape-shield law and said this was not "an appropriate area" for presentation to the jury. The ruling to exclude any evidence regarding Joseph and Travis also precluded any cross-examination regarding whether A.C. had lied to a police officer when she said she had not been touched inappropriately by anyone but Jackson.

In a post-trial ruling, the district court provided a more extensive explanation of its ruling. It said that "prior" sexual activity should be admitted only when it came "prior to the alleged first contact with the victim" under the State's theory of the evidence. The allegations against Jackson charged conduct that began in 1999, while the acts of Joseph and Travis did not occur until 2000. As such, the court held the latter inadmissible: "It would seem ironic, indeed, if a defendant could introduce a child to the world of sexual deviancy and then benefit from besmirching the child's character by showing later sex crimes which were committed against the child by others by their own admission."

*The State's Case Made the Joseph and Travis Allegations Relevant.*

The first step in analyzing Jackson's appeal on the exclusion of evidence regarding Joseph and Travis is to determine whether the excluded evidence even was relevant. Only relevant evidence is admissible.

The State's case emphasized—from opening statement to closing argument—that A.C.'s behavior had deteriorated in significant ways starting about the time of the alleged offenses by Jackson and continuing up until the time of trial. In opening statements, the prosecutor said that A.C.'s mother had noticed changes beginning in summer 1999; A.C. was "acting out, a lot more argumentative, a lot more disagreeable, . . . and really behaving badly." Later in

opening, the prosecutor said that after A.C. went into foster placement in 2002, her mother found out "why [A.C.] has been acting up and behaving so badly between 1999 and her final entry into SRS custody, 2002"—that she had been abused by Jackson. A.C.'s mother testified as forecast in the opening statement, saying that A.C.'s behavior had changed from 1999 until early 2002, during which time she had been "real hateful to people."

In the context of this claim that Jackson's crimes caused A.C.'s behavior changes from 1999 until 2002, an allegation that she was abused by others in 2000 and 2001 is certainly relevant. Evidence is relevant if it has any logical tendency to prove a fact important to the case. K.S.A. 60-401(b). Evidence that similar sexual assaults had occurred during this time frame is surely relevant because the State's evidence and argument suggested Jackson's assaults had caused A.C.'s emotional trauma and bad behavior. The substantial allegations against Joseph and Travis are important pieces of evidence that provide alternative theories for A.C.'s emotional and behavioral problems.

The State suggests that this evidence is not relevant because it has alleged abuse by Jackson that began before the known abuse by others: "Since the sexual abuses committed by Joseph and Travis occurred later in time than when the defendant's abuse began, the Appellant's arguments as to their relevance for purposes of establishing previous sexual conduct fails." The State's argument is not well taken. First, the State assumes that its charges against Jackson are true. But what if the State's charges are not true? The jury is told in a criminal trial that the State has the burden of proof, and we cannot determine relevance by accepting as a premise for our analysis the State's charge—that Jackson committed abuse against A.C. and that Jackson's abuse began sooner than the abuse by Joseph and Travis. Second, after opening statement, the defense was not trying to prove "previous sexual conduct" or a source of sexual knowledge with evidence of the Joseph and Travis abuse. Rather, the defense was trying to show an alternate cause of the behavioral changes the State trumpeted in opening argument.

The State also presented evidence that A.C. was afraid to leave SRS custody and return home to Harvey County because Jackson

had threatened her and remained there. A.C.'s mother even testified that A.C. wanted the mother to move from Harvey County.

Because A.C. had claimed that she was afraid to return home because of Jackson and his prior threats, an allegation that others had abused her in similar ways in Harvey County is relevant too. The prosecutor told the trial judge that Travis was in the community at the time of trial, and the counsel did not know whether Joseph was there or not. In addition, as we will discuss later in this opinion, there was evidence available at least to the prosecution that A.C. had accused Joseph of threatening her life. If, indeed, A.C. was afraid to return to Newton, evidence that one or two other people who had sexually abused A.C. were still living in the community would be relevant in determining whether A.C. was afraid of returning because of Jackson or these other individuals.

Once again, the State's response on relevance is to ask us to accept A.C.'s testimony as true. The State argues that both A.C. and her mother testified that A.C. was afraid to return because of Jackson and that neither of them testified that she was afraid of Joseph or Travis. But the district court did not *allow* her to be asked about Joseph and Travis at trial, and the prosecutor had evidence that she had claimed Joseph had threatened her life. Truth is determined in a trial by challenging evidence, not by presenting only one side. Relevance cannot be determined based on the assumption that A.C.'s claimed fear of Jackson is true when there is a plausible case to be made for a similar fear against others.

*The District Court Unreasonably Restricted the Defendant's Confrontation Rights.*

After establishing that Joseph's and Travis' abuse of A.C. was relevant because it occurred during the same time period that she was allegedly abused by Jackson, we now must decide whether its exclusion violated Jackson's rights. Under the rules of evidence, even relevant evidence is sometimes excluded, and a defendant's cross-examination rights are generally subject to the rules of evidence. *State v. Washington*, 275 Kan. 644, 674, 68 P.3d 134 (2003).

Federal courts are frequently forced to consider the extent of a defendant's constitutional right to confront the witnesses against

him through cross-examination. This is because a federal evidentiary rule provides that evidence about prior sexual behavior of an alleged victim is generally inadmissible, but with an exception when exclusion of the evidence would violate the defendant's constitutional rights. See Fed. R. Evid. 412. Thus, federal courts often address whether a defendant's right to cross-examination requires allowing the defendant the ability to address prior sexual behavior of an alleged victim.

The United States Court of Appeals for the Eighth Circuit considered this issue in a case very similar to ours, *United States v. Bear Stops*, 997 F.2d 451 (8th Cir. 1993). The government charged Bear Stops with sexual abuse of P.M., a 6-year-old boy. The government presented testimony that P.M. exhibited symptoms of a victim of child abuse, such as aggressiveness, hyperactivity, and nightmares. The district court refused to allow evidence that P.M. had been sexually abused by persons other than Bear Stops, specifically three other boys—acts that had occurred "approximately during the same time period" as the alleged abuse by Bear Stops. The Eighth Circuit held that the exclusion of this evidence of an alternative explanation for P.M.'s behavior changes violated Bear Stops' constitutional rights: "The basic information of the undisputed sexual assault by the three boys (the type of sexual assault and the time period during which it occurred) was constitutionally required for Bear Stops to receive a fair trial." 997 F.2d at 457.

Our case is quite similar to *Bear Stops*, and we find it persuasive. Both cases involved alleged sexual abuse of a child by an adult. In both cases, the child had also been sexually abused by other juveniles during about the same time period. In both cases, the government presented evidence to the jury that the alleged victim's behavior had been adversely affected and suggested that this was caused by the criminal acts charged against the defendant. Thus, evidence of the adverse behavioral changes was presented for the purpose of persuading the jury that the defendant had indeed committed the charged offenses and thus caused the behavioral changes. And in both cases, the district court refused to allow the defendant to present evidence about the other abuse, which the defendant offered as an alternative explanation for the behavioral

changes in the alleged victim. As we have already concluded, this excluded evidence was clearly relevant. We also conclude on these facts that the defendant cannot receive a fair trial without an ability to present evidence in support of that alternative theory.

*Bear Stops* is, of course, not a Kansas case, but we consider here the requirements of the United States Constitution, not a provision unique to Kansas. Thus, out-of-state cases are persuasive and, in any event, Kansas caselaw is consistent with *Bear Stops*. In *State v. Atkinson*, 276 Kan. 920, 927-29, 80 P.3d 1143 (2003), the Kansas Supreme Court found a Confrontation Clause violation and reversed a rape conviction when it found that the district court, citing the rape-shield law, had unfairly limited cross-examination of the complaining witness. In *Atkinson*, the defendant claimed that he had had consensual sex with the complaining witness the night before she said that she had been attacked; he also claimed that they had had consensual sex about 4 months before the alleged rape. The Kansas Supreme Court held that even though the defendant had been allowed to testify that he had consensual sex with the alleged victim the night before she claimed she was attacked, precluding cross-examination of the complaining witness about those same facts violated his confrontation rights. The court held that this was critical evidence in part because there was testimony from a nurse that the sperm found during a hospital examination seemed to have deteriorated, which would have been consistent with the defendant's version of events.

*Atkinson* is also significant for another holding made there: that the defendant's constitutional confrontation right also was violated when he was precluded from cross-examining the complaining witness about an important inconsistent statement she had made. The alleged victim in *Atkinson* had initially denied having had any consensual sexual relationship with the defendant, though she later admitted to having such a relationship months before the alleged attack. Even though the statement related to prior sexual conduct, the court held that it was a violation of the defendant's "fundamental right to a fair trial" to preclude cross-examination about it because the complaining witness' "credibility was the critical issue" in the trial. 276 Kan. at 933; see also *State v. Macomber*, 241 Kan.

154, 158-59, 734 P.2d 1148 (1987) (reversing conviction when cross-examination was not allowed about testimony that the key witness gave at the preliminary hearing that the defendant claimed was false).

Our case also resembles *Atkinson* with respect to the district court's decision to preclude cross-examination of the alleged victim regarding a key inconsistent statement. An officer testified at the preliminary hearing that A.C. had told her that no one else had ever touched her inappropriately. That statement was made after the dates on which Joseph and Travis admitted having abused her. The defendant claims on appeal that this, too, was error; the State did not address this issue in its brief except by the argument that no evidence regarding Joseph and Travis should have been allowed. The defendant sought to pursue a theory at trial that A.C. made up the sexual-abuse allegations against the SRS employee in an attempt to get a different placement while in SRS custody and that she made up the allegations against Jackson for her own purposes as well. In closing argument, the prosecutor asked, "Why would she lie?" On the facts of this case, evidence that she may have lied regarding allegations of sexual abuse during the relevant time period is relevant on the critical issue of her credibility. As in *Atkinson*, the preclusion of cross-examination on this issue violated the defendant's confrontation rights.

*The Improper Restrictions on Cross-Examination Were Not Harmless.*

After finding a violation of the defendant's constitutional confrontation rights, we must reverse unless we find the error was harmless. Such a finding requires us to have a firm belief beyond a reasonable doubt that the error had little, if any, likelihood of changing the results of the trial. *State v. Noah*, 284 Kan. 608, 617-18, 162 P.3d 799 (2007). In making this determination, we must consider how important the witness was to the State's case, whether the testimony was cumulative, whether there was corroborating or contradictory evidence on key points, the extent of other cross-examination that was allowed, and the overall strength of the State's case. 284 Kan. at 618.

A.C. was clearly the State's most important witness, and no one else witnessed any of the alleged abuse by Jackson. Until A.C. made the abuse claim in 2002, no one had suspected Jackson of having abused her. She admitted that she had stolen from Jackson on many occasions, which might have been a motive for making up allegations against him. In addition, there were many inconsistencies in her statements. A.C. testified that she was on several medications that affected her memory; at one point, she said she did not remember "half the stuff" that she said because she was "on so many darn medicines." We do not suggest that the inability to retell events exactly the same way every time means that a person is lying—many people remember things differently at different times. But given the inconsistencies in her statements, other possible motives for her allegations, and her own admission about how the medications that she was taking affected her ability to recall events, we cannot conclude beyond a reasonable doubt that the result of the trial would have been the same if the defendant's attorney had been allowed to cross-examine A.C. on the matters we have addressed in this opinion. We are thus required to reverse the defendant's conviction and to remand for a new trial.

*Other Issues*

The defendant raised several other issues on appeal, but we do not believe that any of them should be addressed in light of the conclusions we have already reached. Whether the State violated disclosure requirements before the prior trial is of no significance now that the information has been disclosed and a new trial has been ordered. Nor is any ineffective work by Jackson's counsel in the first trial of moment since a new trial is being ordered. At the new trial, the trial court will evaluate the admissibility of evidence of other bad acts under *State v. Gunby*, 282 Kan. 39, 144 P.3d 647 (2006), rather than under the precedents that were in place at the time of the original trial. Presumably the prosecutor will refrain at a new trial from comments made before in closing that the State appears to concede were in error, though it contends that they were harmless.

In addition, it is certainly possible that the some of the issues will be framed somewhat differently in a retrial, in part because

there will have been a greater gap between the time of the alleged offenses and the time of trial. Given this gap in time, however, we are unable to evaluate whether a psychological evaluation of A.C. should be ordered, which is another issue raised by the defendant on appeal.

The charges here were brought in 2002 and tried in 2004; the defendant was sentenced in 2005. The appellate process in this case included a remand to the district court to hear evidence on the claim that Jackson's counsel did an inadequate job at his trial. After an evidentiary hearing and ruling on that issue in the district court, briefing in the appellate court was completed in June 2007 and oral argument was heard in November 2007. Since then, we have carefully reviewed the 17 volumes of the record in this case in light of the parties' arguments. Based on that review, we believe that the issues raised on appeal other than those related to the defendant's confrontation rights either are no longer of significance in light of our other rulings or would be best addressed in the first instance by the trial court in connection with the new trial that has been ordered.

### Summary and Conclusion

We have concluded that Jackson's convictions must be reversed because he was denied the constitutional right to confront the witnesses against him. We do not set aside a jury verdict lightly, nor do we lightly require that witnesses in an emotionally difficult case testify a second time. But Jackson was sentenced here to more than 20 years in prison on these convictions, and we also recognize that no one can—or should—be sent to prison in the United States unless he or she has received a fair trial in compliance with constitutional requirements.

The judgment of the district court is reversed, and the case is remanded for a new trial.