**James F. SHAW, Plaintiff,**

v.

**UNITED STATES of America, Defendant.[1]**

**Civ. No. 90–3019.**
**Crim. No. 86–30020–01.**

United States District Court,
D. South Dakota,
Central Division.

June 19, 1995.

---

**1.** Plaintiff/Petitioner, James F. Shaw, will be referred to as "Shaw", and Defendant/Respondent, United States of America, will be referred to as "Government".

Darla Pollman Rogers, Onida, SD, for plaintiff.

Bonnie J. Ulrich, Asst. U.S. Atty., Sioux Falls, SD, for defendant.

## MEMORANDUM OPINION AND ORDER

KORNMANN, District Judge.

The Court referred this matter to U.S. Magistrate Judge Mark A. Moreno. The magistrate judge conducted an evidentiary hearing on October 13, 1994. Magistrate Judge Moreno submitted proposed Findings of Act, Report and Recommendation for Disposition to the Court on December 30, 1994.

A copy of the report and recommendation was served on the plaintiff as required by 28 U.S.C. § 636. Plaintiff has filed his written objections thereto.

The Court has made a *de novo* determination that the findings and recommendations of the magistrate judge should be accepted and the case dismissed. The sixteen separate objections by Shaw may be summarized as disagreeing with the magistrate judge's determination that trial counsel's performance was not deficient and that the performance did not prejudice Shaw. Objections 1 through 4 deal with deficiency of trial counsel's performance based on failure to raise constitutional grounds for admission of evidence under Rule 412 of the Federal Rules of Evidence. Objections 5 through 16 deal with the magistrate judge's determinations on the admissibility of the evidence and the finding of lack of prejudice to Shaw.

The crux of Shaw's argument is that trial counsel should have properly offered, under Rule 412 of the Federal Rules of Evidence, testimony of several boys who claim to have had sexual contacts of various kinds with the victim. The evidence, in the trial record and the evidentiary hearing, shows that trial counsel did everything reasonably possible to introduce the evidence on constitutional grounds and other grounds during trial. Assuming that the magistrate judge's determination that this meets the standard for objective competence is precluded by the Eight Circuit's decision in *United States v. Shaw*, 824 F.2d 601 (8th Circuit 1987), *cert. denied*, 484 U.S. 1068, 108 S.Ct. 1033, 98 L.Ed.2d 997 (1988), the motion must nevertheless be denied because the facts fail to show prejudice to Shaw caused by counsel's performance.

There was no evidence offered to show that the putative witnesses had the venereal disease contracted by the victim, or evidence that Shaw did not have the disease. The victim's widened hymen was the subject of contrary testimony by experts for both sides and the testimony of the proffered witnesses on this point would not have been clearly helpful to Shaw. The victim's sexual knowl-

edge was the subject of testimony, both inculpatory and exculpatory to Shaw, regardless of the testimony of the proffered witnesses. The proffered testimony would not have been constitutionally required had these grounds been set forth in the written motion and considered on the merits, if in fact it was not. There was no prejudice; Shaw did not show that he received a trial that was unreliable or fundamentally unfair. *Lockhart v. Fretwell,* —— U.S. ——, ——, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993).

Now, therefore,

IT IS ORDERED:

(1) The Findings of Fact, Report and Recommendations for Disposition of the U.S. Magistrate Judge dated December 30, 1994, should be and are hereby adopted as the Findings of Fact and Conclusions of Law.

(2) The motion of plaintiff should be and is hereby denied with prejudice for the reasons set forth by the magistrate judge and in this Memorandum Opinion and Order.

## FINDINGS OF FACT, REPORT AND RECOMMENDATIONS FOR DISPOSITION

MORENO, United States Magistrate Judge.

The above-entitled matter was referred to this Court on June 28, 1994 by the District Court[2] pursuant to 28 U.S.C. § 636(b)(1)(B), for the submission to the latter Court of Proposed Findings of Fact, Report and Recommendations for disposition of the matter.

Having carefully reviewed and considered all of the evidence and testimony presented together with the records on file in Civ. No. 90–3019 and Crim. No. 86–30020–01, and being fully advised in the premises, this Court does now make and propose the following Findings of Fact, Report and Recommendations for Disposition.

### PROCEDURAL HISTORY

On August 5, 1986, a jury found Shaw guilty of seven counts of carnal knowledge with his foster daughter between April, 1984 and March, 1985, when she was eleven to twelve years old. Shaw was sentenced to twenty-five years imprisonment. He thereafter appealed his conviction to the Eighth Circuit Court of Appeals. The Eighth Circuit affirmed the conviction and the United States Supreme Court denied his petition for certiorari. *United States v. Shaw,* 824 F.2d 601, 602, 610 (8th Cir.1987), *cert. denied,* 484 U.S. 1068, 108 S.Ct. 1033, 98 L.Ed.2d 997 (1988) (*Shaw I* ).

On June 22, 1990, Shaw filed a Motion to Vacate, Set Aside or Correct his Sentence pursuant to 28 U.S.C. § 2255. This Motion was denied by the District Court[3] on January 22, 1993. *Shaw v. United States,* 812 F.Supp. 154 (D.S.D.1993) (*Shaw II* ). After his appeal was initially denied as premature and later reinstated, the Eighth Circuit vacated the District Court's Judgment and remanded the case for further proceedings consistent with its opinion. *Shaw v. United States,* 24 F.3d 1040, 1043 (8th Cir.1994) (*Shaw III* ). On remand, the Eighth Circuit directed that the District Court allow discovery to be completed, hold an evidentiary hearing and ascertain at such a hearing the reasons for the limited offer by trial counsel, Stanley E. Whiting (hereafter Whiting), of the testimony of several young boys who claimed they had sexual intercourse with the victim, S.A. *Id.* Upon a properly developed record, the District Court was further directed to apply the standard in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and determine whether Shaw was entitled to relief.

### FACTUAL BACKGROUND

In February, 1985, the South Dakota Department of Social Services in Mission, South Dakota, received an anonymous referral containing vague information that S.A. was being physically abused and/or was having problems at her home. Angela Keierleiber, a social worker, met with and talked to S.A. at the St. Francis school. S.A. initially denied she was having any problems at home until Keierleiber asked her if anyone had touched her in private places. Because she perceived that S.A. was reluctant to verbalize her experiences, Keierleiber gave S.A. a pen and pa-

---

**2.** The Honorable John B. Jones, then Chief United States District Judge, presiding.

**3.** The Honorable Donald J. Porter, then Senior United States District Judge, presiding.

per and asked her to write down what had happened to her. S.A. proceeded to write a short statement and then verbally tell Keierleiber that Shaw, her foster parent, had been having sex with her for the last year. S.A., who was born on September 17, 1972, related that Shaw began having sexual intercourse with her when she was eleven years old. S.A. was removed from the Shaw household on April 11, 1985. That same day, Keierleiber took S.A. to a clinic in Mission where S.A. was seen by Betty Kalblinger, a physician's assistant. Kalblinger conducted a pelvic exam and after doing so concluded that S.A.'s vaginal orifice was widened, which indicated that there had been sexual activity or some form of vaginal dilation going on, and that her hymen was not intact. Kalblinger also did a venereal disease smear which proved negative. Kalblinger, however, admitted on cross-examination that she had neither tested for nor found Trichomonas (a sexually transmitted disease).

In August, 1985, Mark Werpy, a medical doctor from Pierre, South Dakota, examined S.A. At the time he examined her, Werpy opined that S.A. had an intact hymen and had not engaged in sexual intercourse, at least with a man having a normal-sized penis. In Werpy's view, based in part on his examination and measurements of Shaw's penis, S.A. could not have had sexual intercourse with Shaw thirty times (as she maintained) or even once, because her hymenal ring was still intact. Werpy also related that S.A. never complained to him of any vaginal itching, discharge or discomfort and that he found no sign of Trichomonas or other venereal disease while examining her.

On September 17, 1985, S.A. was seen by Catherine Buck, a certified nurse midwife, at the St. Francis Indian Health Management Clinic after S.A. began complaining of vaginal discharge. Buck did a wet mount exam, which revealed that S.A. had an active Trichomonas infection. Buck also did a pelvic exam on S.A., concluding that her hymen was not intact and that there may have been hymenal penetration.

In January, 1986, S.A. was seen in Watertown, South Dakota by Clark W. Likness, a family physician, and asked to give a diagnosis and to recommend a plan of treatment. Likness obtained a detailed history of S.A.'s

sexual abuse and conducted a physical examination of her. After doing so, he concluded that S.A.'s hymen was not intact, that she had experienced sexual activity and that his findings were consistent with sexual activity and abuse.

Prior to trial, Shaw filed two separate motions under Federal Rule of Evidence 412, seeking to admit the testimony of several young boys who claimed they had engaged in sexual intercourse with S.A. The trial court denied the motions, and, although Shaw persisted in his attempts to introduce this testimony through offers of proof at the trial, the boys were not allowed to testify.

On direct appeal, Shaw raised the Rule 412 issue as a basis for reversing his convictions. The Eighth Circuit refused to review Shaw's claims that the evidence should have been admitted under Rule 412(b)(2)(A) to show an alternative source of S.A.'s venereal disease(s) and as "constitutionally required" under Rule 412(b)(1) based on its belief that these grounds for admitting the boys' testimony, although raised on appeal, had not been properly presented to the trial court. *Shaw I,* 824 F.2d at 603 n. 2, 606–07 n. 6.

Instead, the only question considered by the Eighth Circuit was "whether the testimony elicited by the Government regarding the condition of S.A.'s hymen created an issue of whether Shaw was or was not, with respect to S.A. 'the source of semen or injury' ". *Id.* at 604 (quoting Fed.R.Evid. 412(b)(2)(A)). To resolve this question, the Court found it necessary to "examine the relevant testimony to determine whether the described condition of S.A.'s hymen constitute[d] an injury." *Id.*

After review of the record, the Eighth Circuit concluded that witness testimony failed to establish that S.A. had been "injured" within the meaning of Rule 412(b)(2)(A).

Although considered to be "compelling", the Eighth Circuit rejected Shaw's argument that, when the prosecution offers evidence of a rape victim's physical condition to corroborate her testimony that the act took place, the defendant should be allowed to offer evidence of the victim's past sexual behavior to show an alternative source for her physical

condition. *Id.* at 605–06. Rather, the Court determined that Rule 412(b)(2)(A) would allow only the admission of evidence of past sexual behavior to show an alternative source for physical consequences that constitute an "injury"—such as a cut, bruise or tear—that was sustained reasonably close in time to the alleged rape or sexual assault. *Id.* at 606–08. The Court went on to hold that because the trial testimony failed to establish that the widening of S.A.'s hymen involved a Rule 412(b)(1)(A) "injury", the trial court properly excluded the boys' testimony, which Shaw had offered solely on the issue of whether he was the source of S.A.'s widened hymen. *Id.* at 607–08.

The Eighth Circuit also rejected Shaw's other evidentiary contentions including his claim that the trial court erred in excluding certain testimony concerning S.A.'s watching a Playboy television channel. *Id.* at 610.

Shaw subsequently filed a § 2255 Motion raising three interrelated claims of ineffective assistance of counsel. First, Shaw asserts that Whiting was constitutionally ineffective because he failed to offer the evidence of S.A.'s past sexual behavior under Rule 412(b)(2)(A) and 412(b)(1) to show an alternative source for S.A.'s venereal disease(s). Second, Shaw contends that Whiting was ineffective for failing to offer evidence of S.A.'s past sexual behavior under Rule 412(b)(1) to provide an alternative explanation for S.A.'s sexual knowledge and sophistication. Finally, Shaw argues that Whiting was ineffective for failing to offer the evidence under Rule 412(b)(1) to provide an alternative explanation for S.A.'s widened hymen.

After the case was referred to this Court by the District Court, Shaw was afforded an opportunity to complete his discovery and subsequently a two-day evidentiary hearing was held at which Shaw and several witnesses testified, including three of the boys Shaw sought to call as witnesses at trial, concerning S.A.'s past sexual behavior.

## DISCOVERY

The District Court originally denied Shaw's § 2255 Motion before the completion of discovery, which included the efforts of a court-appointed investigator to find and interview Shaw's witnesses, and without holding an evidentiary hearing at which Whiting could be questioned regarding the bases for his actions. *Shaw III*, 24 F.3d at 1042. On appeal, Shaw claimed that the District Court ruled prematurely because it had not allowed discovery to run its course and had not held an evidentiary hearing. *Id.* The Eighth Circuit agreed and remanded the matter to the District Court to allow discovery to be completed and enable Shaw to call and examine Whiting at an evidentiary hearing about his purported failure to rely on exceptions to the rape shield law that would have allowed for the admission of testimony regarding S.A.'s past sexual behavior.

After the case was transferred on June 28, 1994 (R. 158), this Court scheduled an evidentiary hearing for September 28, 1994 (R. 159), and granted Shaw's request for the appointment of a private investigator, R. 161, 163. Subsequently, this Court, on August 2, 1994, at the request of counsel, rescheduled the evidentiary hearing for October 13, 1994. R. 167–68. Shaw thus had nearly four months to complete his discovery and was given almost three months to interview witnesses with the help of his court-appointed investigator.

When asked by this Court whether he had been able to complete his discovery, Shaw's habeas counsel indicated that "for purposes of this hearing today we have completed discovery and are ready to proceed." Evid. Hrg. Tr. 4. Indeed, at the hearing itself, Shaw called Whiting and three of the boys identified in his Rule 412 Motions and testified himself. *Id.* at 7–168, 316–40.

Based on the time period Shaw had to prepare for the evidentiary hearing, his habeas counsel's on-the-record representations and the fact that he was able to call several witnesses, including Whiting, this Court finds that Shaw was able to complete any and all unfinished discovery and was prepared to proceed with the merits of his ineffective assistance of counsel claims. This being the case, and in view of the fact that an evidentiary hearing was held in which Shaw was allowed to fully air his claims, the Court further finds that the matter is now ripe for adjudication.

## INEFFECTIVE ASSISTANCE
## OF COUNSEL

### A. STANDARD OF REVIEW

Shaw contends that he received ineffective assistance of counsel. He points to several instances of alleged incompetent representation on the part of Whiting. Each of these instances will be addressed below.

■ The test formulated by the United States Supreme Court for determining whether counsel has rendered constitutionally ineffective assistance of counsel is a highly demanding one and contains two components: (1) deficient performance; and (2) prejudice. *Strickland v. Washington*, 466 U.S. at 687–88, 104 S.Ct. at 2064–65; *Kimmelman v. Morrison*, 477 U.S. 365, 382, 106 S.Ct. 2574, 2586–87, 91 L.Ed.2d 305 (1986). To set aside a conviction on the ground of ineffective assistance of counsel, a defendant must show that his counsel's representation fell below an objective standard of reasonableness and that the result of the proceeding was rendered unreliable or fundamentally unfair by counsel's deficient performance. *Lockhart v. Fretwell*, —— U.S. ——, ——, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993); *see also Nix v. Whiteside*, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986).

The first component of the *Strickland* test is nothing more than a restatement of attorney competence already set forth in *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); and *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). *See Strickland*, 466 U.S. at 687–91, 104 S.Ct. at 2064–66; *see also Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). The second, or "prejudice" component, on the other hand, focuses on whether counsel's deficient performance renders the result of the trial proceeding unreliable or fundamentally unfair. *Fretwell*, —— U.S. at ——, 113 S.Ct. at 844; *see also Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Kimmelman*, 477 U.S. at 393, 106 S.Ct. at 2592 (Powell, J., concurring). Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him. *Fretwell*, —— U.S. at ——, 113 S.Ct. at 844.

### B. DEFICIENT PERFORMANCE

1. *Venereal Disease(s) Claim Under Rule 412(b)(2)(A).*

■ In compliance with Fed.R.Evid. 412(c), Whiting filed two pre-trial motions, proffering evidence to rebut the Government's evidence of the condition of S.A.'s hymen. R. 22, 46. The motions asserted that seven young boys would testify that they had sexual intercourse with S.A., one that he had sexual intercourse with S.A. fifty times. The motions, however, did not seek to offer the testimony of the boys to show that any venereal disease(s) S.A. may have contracted came, not from Shaw, but rather, from one or more of the boys. S.A.'s venereal disease(s), however, never became an issue until Buck testified on rebuttal for the Government that S.A. had an active Trichomonas infection. T.Tr. 621–22, 625, 628, 630–31. Likness, another rebuttal witness, then confirmed that S.A. had a vaginal infection caused by Candida, a sexually-transmitted yeast specimen. *Id.* at 654. During the next in-chambers conference following Likness' testimony, Whiting sought to offer, on more than one occasion, the testimony of four of the boys identified in the pre-trial motions in an effort to establish an alternative source for S.A.'s sexually-transmitted disease(s). *Id.* at 690, 694–95, 698–701, 704–05. In doing so, Whiting maintained that the disease(s) issue had just been brought to light by the Government's two rebuttal witnesses, and that he was therefore entitled to offer the boys' testimony under Rule 412 to rebut the inference created by the Government's witnesses that Shaw had given S.A. venereal disease(s). *Id.* at 695–698. The trial court, after applying "all of the provisions" of Rule 412, denied the request. *Id.* at 701, 704–05. The trial court did not deny the request for lack of a proper presentation in writing or because it was untimely.[4] *Id.* Instead, the court passed on the merits of the request (*id.* at 700–02, 704–05), impliedly determining that the disease(s) issue was one that had "newly-arisen" during

---

4. In fact, the trial court indicated that the request was "timely filed", but even so, overruled the same. T.Tr. 700.

the course of the trial for purposes of Rule 412(c)(1).[5]

On the facts of this case, viewed within the scheme of things from counsel's perspective at the time, Whiting's actions were within the wide range of professionally competent assistance. *Strickland,* 466 U.S. at 687–91, 104 S.Ct. at 2064–66.

### 2. *Constitutionally Required Claims.*

Whiting orally raised, on two or more occasions at trial, the claims that S.A.'s past sexual behavior with four of the boys was "constitutionally required" to be admitted under Rule 412(b)(1). T.Tr. 291–95, 325–28; Evid.Hrg.Tr. 119–22, 135–40, 142–43, 150, 159.[6] Although the claims could and probably should have been raised in a pretrial motion, the trial court never denied the claims because they were untimely made or because Rule 412(c) was not complied with. Rather, the record reflects that the trial court denied the claims on their merits.[7] T.Tr. 292–94, 323, 326–27; Evid.Hrg. 120,

---

**5.** The record clearly indicates that the source of S.A.'s sexually transmitted disease(s) or infection(s) was a "new" issue that had arisen during the latter stages of the trial. T.Tr. 621–22, 625–26, 654, 695, 698, 700–01, 704–05.

**6.** This Court is not unmindful of the Eighth Circuit's finding that Shaw waived his right to obtain full review of his Rule 412(b)(1) argument on appeal because he neither raised the argument by written motion or orally at trial. *Shaw I,* 824 F.2d at 606–07, n. 6; *Shaw III,* 24 F.3d at 1041; *see also United States v. Bear Stops,* 997 F.2d 451, 455, n. 2 (8th Cir.1993). A review of the record, however, reveals that Whiting clearly raised this argument at trial on two separate occasions and therefore preserved it for review on appeal. Whiting first raised the argument during a bench conference while Keierleiber was on the witness stand:

MR. WHITING: ... It will be my position at a later time that these other sexual escapades or occurrences that she had are admissible under Rule 412, *the part that talks about it being constitutionally admissible also.*

\* \* \* \* \* \*

MR. WHITING: Your Honor, also things have changed since we got here to trial. The fact the Government is not going into the medical evidence because they don't want me to get into the 412, my position, *Rule 412 also says there are constitutional grounds for admitting that type of testimony* and it is my opinion that the equal protection, due process of law Fourteenth Amendment would let or make that relevant because any time a 13–year–old or 12–year–old girl testifies about sexual abuse I think that a jury of twelve people sitting there are in a position that they are going to think that the kid would not say if she did not experience and an age, the only place she could experience was with the guy she claimed who did it and I've got four boys out here that will say that they were having sexual relations with her during that period of time and that is my position is that is why she can describe these details of sex because she was doing it with other people other than the defendant and that goes to failing to give Jim Shaw due process.

THE COURT: You are misreading the portion of the rule that refers to *constitutional require-*

ments. I read the rule. I reread it after reading your motions and that does not mean what you say it does, so my ruling is, having heard your written and oral arguments, that you may not call those four young men. So forget that. I don't want there to be any doubt at all about this.

T.Tr. 291–93 (emphasis added). Then, before Kalblinger continued with her redirect examination, Whiting again sought to admit the testimony of the boys based on Rule 412(b)(1):

\* \* \* \* \* \*

MR. WHITING: I'm also offering that because it would show the jury why this young lady can describe in vivid detail sexual relations because she had sexual relations with other people and denies the defendant in this case due process of the law, equal protection not to be able to go into that *as contemplated by part [b][1] of Rule 412.*

T.Tr. 325 (emphasis added); *see also* T.Tr. 326–27; Evid.Hrg. 119–22, 135–40, 142–43, 150, 159. Whiting also raised and briefed the "constitutionally required" claims on appeal and to the United States Supreme Court in his certiorari petition. R. 124; Evid.Hrg.Tr. 144; *see also* Evid. Hrg.Tr. 147, 164–66. It appears that the Eighth Circuit simply overlooked the statements made by Whiting and the trial court in its review of the case on direct appeal. Whether this is the case or not, however, is immaterial. In this Court's view, the record plainly demonstrates that Whiting properly raised the "constitutionally required" argument before the trial court and preserved it for appeal.

**7.** The Eighth Circuit's finding that Shaw's "constitutionally required" claim was denied by the trial court in part because it was "untimely", *see Shaw I,* 824 F.2d at 603, n. 2; *Shaw III,* 24 F.3d at 1041, is not fairly supported by the record. This Court has read and reread the record, including the trial transcript, and can find no reference to where the trial court ruled that Shaw's "constitutionally required" claims, or for that matter any of his Rule 412 arguments, were denied as untimely or because Rule 412(c) had not been satisfied. Rather, the trial court viewed and treated these claims/arguments as being properly before it and passed on the merits of the same. *Ante* at 1270–71 & n.n. 4–6.

122, 137–38, 140, 150, 161; *see also* T.Tr. 690–712.

Having argued and obtained a ruling on the "constitutionally required" claims before the trial court and having raised these claims on direct appeal and in a certiorari petition, Whiting cannot be faulted or held accountable for the Eighth Circuit's decision to decline to review the claims and, more importantly, be said to have acted outside the "rigid requirements for acceptable assistance." *Strickland* 466 U.S. at 690, 104 S.Ct. at 2066.

3. *Whiting's Performance Generally.*

Although Whiting, by his own admission, was neglectful in not filing a written pretrial motion on the "constitutionally required" claims (*see* Evid.Hrg. Tr. 117–119), his performance with respect to the Rule 412 claims as a whole was reasonable and within the range of competence demanded of an attorney in the same situation under prevailing professional norms. *See Strickland,* 466 U.S. at 687–91, 104 S.Ct. at 2064–66. Any "neglect" caused by Whiting's failure to file a pretrial motion pertaining to the "constitutionally required" claims was cured when he orally raised the claims at trial and postured them for a ruling on the merits. By doing so, Whiting was able to procedurally ripen these claims and place them in the same basket before the trial court as the claims he earlier raised in his pretrial motions.[8] This conduct, while perhaps redemptive on Whiting's part when examined in retrospect, was nonetheless the product of skillful and vigorous trial advocacy and did not constitute deficient performance within the meaning of *Strickland* and its progeny.

Indeed, the record reflects that Whiting persisted in attempting to convince the trial court to admit the boys' testimony under Rule 412, even to the point of irritating the trial judge. T. Tr. 293–94, 325–26, 688; Evid.Hrg. Tr. 142. Whiting did succeed in getting evidence of S.A.'s sexual knowledge/sophistication in through the back door

when the jury heard evidence that S.A. watched the Playboy television channel. *See Shaw I,* 824 F.2d at 610; T. Tr. 350–51, 357, 418, 420–22, 520–21, 574, 593–98; Evid.Hrg. Tr. 151–52. He also rather effectively cross-examined Buck and Likness regarding S.A.'s infections and her widened hymen. T. Tr. 625–28, 670–80.

In discussing Whiting's performance and the reasonableness of the challenged conduct from his perspective at the time and in light of the facts of the case, this Court cannot conclude that Whiting acted deficiently under the first prong of the *Strickland* test.[9]

## C. PREJUDICE

### 1. *Generally.*

■ Even if Whiting's conduct was deficient and objectively unreasonable under the circumstances, Shaw was not unduly prejudiced by this so as to warrant § 2255 relief.

The record reflects that Whiting properly presented Shaw's Rule 412 claims at trial and that the trial court ruled on the merits of the same. *Ante* at 1270–72 & n.n. 4–8; *see also,* T. Tr. 3–6, 157–59, 240–46, 319, 321–27, 517–22, 619, 686–89. Shaw was thus not prejudiced by Whiting's failure to raise the Rule 412(b)(2)(A) and "constitutionally required" claims in his pretrial motions. Indeed, the trial court passed on and denied these claims, not because of any procedural bar found in Rule 412(c), but rather, because they lacked merit and the proffered evidence was excludable under Rules 412 and 403. T. Tr. 291–94, 319, 323, 325–27, 690–712. By doing so, the trial court obviated any potential prejudice Shaw might suffer as a result of Whiting's failure to raise these claims prior to trial in compliance with the dictates of Rule 412(c).

In any event, even if Whiting would have raised the Rule 412(b)(2)(A) and "constitutionally required" claims in a pretrial motion in accordance with Rule 412(c), the result he obtained at trial (denial of the claims on the

---

8. Significantly, Whiting testified that his offer of proof would have been the same whether the prior sexual conduct evidence was offered under Section (b)(1) or Section (b)(2) of Rule 412. Evid.Hrg.Tr. 134–35.

9. Had Whiting *not* raised and successfully obtained a ruling on the merits from the trial court on the "constitutionally required" claims, however, his performance would have been deficient even under the highly deferential standard of judicial scrutiny.

merits) would have been no different. A review of the record indicates that the trial court would not allow Whiting to present evidence to the jury of any alleged sexual activity involving S.A. and the boys. T. Tr. 291–94, 326–27, Evid.Hrg. Tr. 121, 142–43, 150; *see also* T. Tr. 690–712. From this record, it is quite apparent that Shaw would have been no better off had Whiting raised the Rule 412(b)(2)(A) and "constitutionally required" claims before trial in a written motion which satisfied the strictures of Rule 412(c). Because of this, Shaw was not prejudiced by any "neglect" on the part of Whiting.

2. *Admissibility of the Proffered Evidence.*

a. Legal Backdrop.

■ The Fifth Amendment right to due process of law and the Sixth Amendment right to confront and cross examine witnesses require only that the criminal defendant be permitted to introduce all relevant and admissible evidence. *United States v. Bear Stops,* 997 F.2d 451, 454 (8th Cir.1993); *United States v. Kasto,* 584 F.2d 268, 272 (8th Cir.1978), *cert. denied,* 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979); *see also Faretta v. California,* 422 U.S. 806, 818, 95 S.Ct. 2525, 2532–33, 45 L.Ed.2d 562 (1975); *United States v. Begay,* 937 F.2d 515, 520 (10th Cir.1991). The Supreme Court has emphasized that "the right to present relevant testimony is not without limitation." *Michigan v. Lucas,* 500 U.S. 145, 149, 111 S.Ct. 1743, 1746, 114 L.Ed.2d 205 (1991). The Court observed that the right to present relevant testimony remains "[s]ubject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation," *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) and "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process," *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973). The Court recognized that a state has a legitimate interest in protecting rape victims against unwarranted invasions of privacy and harassment regarding their sexual conduct. *Lucas,* 500 U.S. at 150, 111

S.Ct. at 1746–47. The Court also emphasized that trial judges retain wide latitude to reasonably limit a defendant's right to cross-examine a witness "based on concerns about, among other things, harassment, prejudice, confusion of issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." 500 U.S. at 149, 111 S.Ct. at 1746 (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986)). The Court, however, noted that restrictions on a defendant's rights to confront adverse witnesses and to present witnesses "may not be arbitrary or disproportionate to the purposes they are designed to serve." 500 U.S. at 151, 111 S.Ct. at 1747 (quoting *Rock v. Arkansas,* 483 U.S. 44, 56, 107 S.Ct. 2704, 2711, 97 L.Ed.2d 37 (1987)).

■ In determining whether a defendant's Fifth and Sixth Amendment rights were violated, a court must engage in a two-part inquiry. First, it must inquire as to whether the sexual misconduct evidence is relevant.[10] If the evidence is not relevant, the defendant has no constitutional right to present it. *Jones v. Goodwin,* 982 F.2d 464, 469–70 (11th Cir.1993). If the evidence is relevant, the court must then ask whether other legitimate interests outweigh the defendant's right to present the evidence and determine whether the same should be excluded, limited or admitted *in toto. United States v. Bear Stops,* 997 F.2d at 454–57; *Wood v. State of Alaska,* 957 F.2d 1544, 1549–50 (9th Cir.1992). Because the trial court has broad discretion both in determining relevancy and whether the prejudicial effect or other concerns outweigh the probative value of the evidence, a reviewing court will not disturb the trial court's evidentiary rulings unless it concludes there has been an abuse of discretion. *Bear Stops,* 997 F.2d at 457–58; *see also, United States v. Torres,* 937 F.2d 1469, 1471–73 (9th Cir.1991) (finding no Sixth Amendment violation when the trial court did not abuse its discretion in excluding evidence of the victim's sexual conduct), *cert. denied,* 502 U.S. 1037, 112 S.Ct. 886, 116 L.Ed.2d 789 (1992). A trial court does not abuse its discretion so

---

**10.** Relevant evidence is any evidence having a tendency to make the existence of a material fact more or less probable than it would be without the evidence. *United States v. Begay,* 937 F.2d at 521; Fed.R.Evid. 401.

long as the jury has "sufficient information" upon which to assess the credibility of witnesses. *Wood v. State of Alaska,* 957 F.2d at 1550; *see also Delaware v. Van Arsdall,* 475 U.S. at 680, 106 S.Ct. at 1436 ("we think that a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross examination . . . 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" quoting *Davis v. Alaska,* 415 U.S. at 318, 94 S.Ct. at 1111).

### b. Evidence Not Uncontroverted.

■ At the outset, unlike the fact situations found in *Bear Stops* and *Begay,* two cases which Shaw relies heavily on in support of his § 2255 claims, the evidence concerning S.A.'s past sexual behavior was not uncontroverted but, instead, very much in dispute.[11] S.A. vehemently denied that she had sexual contact at any time with any of the boys identified in the two pretrial motions. Evid. Hrg. Tr. 294–300. Because S.A. maintained that the incidents testified to by three of the boys never happened, the potential for jury confusion and for a distracting "mini-trial" and/or "fishing expedition" into these incidents was substantial. *See Bear Stops,* 997 F.2d at 457; *United States v. Torres,* 937 F.2d at 1475; *see also, Tague v. Richards,* 3 F.3d 1133, 1136–39 (7th Cir.1993) (where child molestation victim admitted she had "unwanted sexual relations with her father years ago" and inquiry into the incident was limited and made through examining physician, evidence held to be admissible). The corresponding risk of harassment, embarrassment and intrusion into S.A.'s privacy as well as the risk of improperly influencing the jury's impression of S.A. as a "wild and sexually loose" eleven to twelve year old (*see*

T. Tr. 291), was likewise substantial and particularly prejudicial. The jury, if such evidence was admitted, could have concluded, contrary to the rape law, that S.A., with her sexual past, could not have been raped or assaulted or that she somehow deserved to be raped and/or assaulted after engaging in the sexual activities alleged by the boys. In view of these considerations, it is highly questionable and probably doubtful that much, if any, of the proffered evidence was admissible.[12] For this reason, Shaw's § 2255 claim is not sustainable and must fail.

### c. Venereal Disease(s).

Shaw asserts that Whiting's failure to offer evidence of S.A.'s past sexual relations under Rule 412(b)(2)(A) and under Rule 412(b)(1) to show that persons other than himself were responsible for S.A.'s venereal disease(s) constitutes ineffective assistance of counsel.

Although the "venereal disease(s)" issue was presented to and rejected on the merits by the trial court (T. Tr. 619), the Eighth Circuit appears to have implicitly decided at least the first part of the issue on direct appeal. *See Shaw I,* 824 F.2d at 605–08. The *Shaw I* Court, in discussing Rule 412(b)(2)(A) and defining what constitutes an "injury" to the victim so as to allow a court to deviate from Rule 412's general prohibitions, determined that evidence of a victim's past sexual behavior, offered for the purpose of showing the source of the victim's "pregnancy" and "disease" was not admissible:

> Subdivision (b)(2)(A), as passed with its "semen or injury" language, deleted language of an earlier bill, which would have allowed past sexual behavior evidence when there was an issue of "the source of pregnancy, disease, semen, or injury."

---

**11.** In *Bear Stops* and *Begay,* young child victims, six years old and eight years old respectively, acknowledged that they had sexual contact with a person or persons other than the accused. In *Begay,* the other individual had plead guilty to previously raping the victim and in *Bear Stops* there was uncontroverted evidence that the victim had been sexually assaulted by three other boys subsequent to but around the same time as the alleged assault by the accused.

**12.** Having listened to the testimony of Clifford, Ford, Rangel and S.A. and having weighed their

respective credibilities in light of the record as a whole, this Court cannot state with any modicum of certainty or probability that the alleged sex acts between S.A. and Clifford, Ford and Rangel did in fact occur. If they did occur or at least if a jury could reasonably find they occurred by a preponderance of the evidence, this Court believes that the probative value of such evidence was substantially outweighed by the danger of unfair prejudice and confusion of the issues and that the evidence was excludable on this ground.

Significantly, "pregnancy" and "disease" are both consequences that can be caused by sexual activity occurring many months, in the case of "pregnancy" and possibly many years, in the case of "disease" before the alleged rape. On the other hand, it is safe to say that evidence of past sexual behavior to prove the "source of semen" would, depending on medical science, be limited to sexual activity occurring a short time, probably a few days, before the alleged rape. We think that like the "semen" exception and unlike the abandoned "pregnancy" and "disease" exceptions, the "injury" exception allows a court to deviate from Rule 412's general rule only when the evidence establishes an injury—such as a cut, bruise or tear—that was sustained reasonably close in time to the alleged rape.

\* \* \* \* \* \*

Our review of the legislative history to Rule 412's injury exception convinces us that Congress had no intention to expand the commonly understood meaning of the word "injury" to include all physical consequences. We thus hold that the district court did not err in excluding evidence of S.A.'s past sexual behavior.

*Id.* at 607–08 (citation omitted); *see also id.* at 607, n. 7. Because the Eighth Circuit on direct appeal determined, at least implicitly, that the S.A.'s venereal disease(s) did not constitute an "injury", Shaw was not entitled to offer evidence of her sexual activity to prove the "source" of her venereal disease(s). *Id.; see also United States v. Duran,* 886 F.2d 167, 168–78, n. 4 (8th Cir.1989).[13] As such, Shaw cannot succeed in his ineffective assistance of counsel assertion on this basis, inasmuch as there is no duty, under relevant standards of conduct, to raise and pursue a

meritless argument. *See Strickland,* 466 U.S. at 687–91, 104 S.Ct. at 2064–66.

More importantly, Shaw cannot succeed in his assertion because he has failed to show that one or more of the boys had venereal disease at the time they allegedly had sexual relations with S.A. Three of the boys, namely Benjamin Clifford, John Ford and Gene Rangel, testified that they never had venereal disease.[14] Evid.Hrg. Tr. 18, 54, 94.

Assuming, without conceding, that such evidence had some relevancy to S.A.'s venereal disease(s), the probative value of the evidence was far outweighed by the risk of unfair prejudice and confusion of the issues. *Wood v. State of Alaska,* 957 F.2d at 1551–54. In addition, legitimate considerations deserving of "heightened protection" *see Lucas,* 500 U.S. at 148, 111 S.Ct. at 1745–46, such as S.A.'s interest in avoiding harassing inquiry into her sexual conduct and invasions of her privacy, weigh strongly in favor of such evidence being excluded. Given these considerations and the more traditional ones pertaining to prejudice, confusion of the issues as well as the relative weight of the same, the proffered evidence was plainly inadmissible to show that S.A. contracted her venereal disease(s) from someone other than Shaw. Because the evidence was inadmissible, Shaw suffered no prejudice as a result of any alleged failure on Whiting's part to properly raise the assertion before the trial court and preserve it for appeal.

d. Sexual Knowledge/Sophistication.

Shaw contends that he was constitutionally entitled to introduce evidence of S.A.'s past sexual behavior with the boys to negate the inference that her sexual knowledge and sophistication was gained from his carnal knowledge of her. The record, however,

---

**13.** It appears that the Eighth Circuit, based on its decision in *Duran,* has determined that evidence of a rape victim's past sexual behavior, when offered to show an alternative source for the victim's venereal disease, as when it is offered to provide an alternative explanation for the victim's pregnancy, is not "constitutionally required" to be admitted under Rule 412(b)(1). 886 F.2d at 168–70.

**14.** Clifford did testify that he "had crabs a while back" but went on to state that he contracted this problem in approximately 1991 or 1992 (Evid.

Hrg.Tr. 18), some seven or eight years *after* the acts charged in the indictment occurred and five or six years *after* Shaw's trial was held. Evidence of S.A.'s alleged sexual activity with these boys, offered for the purpose of providing an alternative explanation for S.A.'s venereal diseases, therefore, had little, if any, relevancy other than to show that S.A. was a promiscuous woman with questionable sexual morals. This theory of admissibility has consistently been rejected as reflecting outdated views of women and sexuality, and this Court similarly rejects it. *See United States v. Kasto,* 584 F.2d at 271–72.

does not show that S.A. had any unusual knowledge of sexual matters beyond her years.

At the time of trial, S.A. was thirteen years old. T. Tr. 57. She testified that the nomenclature she used in her testimony about what happened to her was learned in a seventh or eighth grade class at school. T. Tr. 67–68; see also, id. at 682. In view of her age, and the educational "source" of her sexual knowledge as well as her terminology and descriptions of the sexual acts themselves, (see id. 67–96), it cannot be said nor clearly inferred from the record that S.A.'s sexual sophistication was gained solely from her encounters with Shaw. Any alleged sexual conduct between S.A. and the boys, therefore, was inadmissible to rebut the inference that S.A. could only have obtained her sexual sophistication from the carnal knowledge perpetrated upon her by Shaw. Shaw II, 812 F.Supp. at 159 & n. 5; United States v. Bear Stops, 997 at 458; United States v. Torres, 937 F.2d at 1469, 1474; State v. Jones, 490 N.W.2d 787, 791 (Iowa 1992); State v. Simmons, 759 P.2d 1152, 1156 (Utah 1988); see generally, 23 C. Wright & K. Graham, Federal Practice & Procedure, § 5387 at 577, n. 95.2 (1994 Supp.); Anno, Admissibility of Evidence That Juvenile Prosecuting Witness in Sex Offense Case Had Sexual Experience for Purposes of Showing Alternative Source of Child's Ability to Describe Sex Acts, 83 A.L.R. 4th 685 (1991 & 1994 Supp.).

Shaw's proffered evidence was inadmissible for another reason as well. The evidence, although relevant, would confuse the issues to be tried and unduly prejudice the jury. The evidence would likewise expose S.A. to harassment, embarrassment and privacy invasions. On balance, these considerations far outweighed the probative value of the evidence and the purpose(s) for which it was sought to be admitted. See Wood v. State of Alaska, 957 F.2d at 1551–54.

Because the proffered evidence was not "constitutionally required" to be admitted, Shaw was not prejudiced by Whiting's actions or inactions with respect to the presentation of the same.[15]

### e. Widened Hymen.

#### (i) Benjamin Clifford.

Clifford, the 25–year–old (d.o.b. 7–15–69) nephew of Shaw, testified that he had anal intercourse with S.A. on several occasions when he was between ten and thirteen years old and S.A. was between seven and ten years of age. Evid.Hrg. Tr. 9–12, 15–17, 19–20; see also id. at 314. Aside from anal intercourse, Clifford stated he had no other type of sexual contact with S.A. Id. at 10, 30–31. The relevancy of the proffered evidence, if any existed, was marginal and was turned on its head by the prejudicial impact of the same.

Initially, the sex acts sought to be admitted, namely anal intercourse, were different from the carnal knowledge acts of vaginal intercourse charged in the indictment and testified to at trial. The similarity or lack thereof between a rape victim's alleged sexual experiences with a third party and the charged acts of sexual abuse affects the relevancy of these experiences and their admissibility. Anno, 83 A.L.R. 4th at 712–18. The more the sexual experiences and charged sex acts differ from and are unlike each other, the more likely it is that evidence of the experiences will be excluded. Id. Here, the sex acts sought to be admitted were not similar to the charged acts and if relevant, certainly were not admissible because of a vast disparity between the two.

S.A.'s alleged anal intercourse with Clifford was remote in time to the charged acts and therefore was inadmissible on this ground, as well. Clifford testified that the anal intercourse he had with S.A. occurred between 1979 and 1982, but could not pinpoint the time frame of these acts with any

---

**15.** Although Whiting unsuccessfully attempted to admit evidence of S.A.'s past sexual conduct to rebut the "source" of her sexual sophistication, see T. Tr. 707–09, to his credit, Whiting did succeed in getting evidence before the jury that S.A. obtained her sexual knowledge from a Playboy television channel. See Shaw I, 824 F.2d at 610; ante at 1272. These efforts on the part of Whiting militate toward and strongly support this Court's finding that Shaw has failed to make the requisite showing of prejudice sufficient to necessitate habeas relief under the Strickland standard.

more certainty. Evid.Hrg. Tr. 12, 15–16, 19–20, 26–28. If the acts did in fact take place during the time frame testified to by Clifford, then they could have occurred as many as five or six years before the acts of carnal knowledge charged in the indictment. Even if the anal intercourse incidents all occurred in 1982 [16], a two to three-year gap still existed between these incidents and the ones charged. Because Shaw was unable to establish a reasonable time nexus (i.e., less than two to six years) between the proffered anal intercourse evidence and the carnal knowledge acts charged in the indictment, the evidence was too remote, collateral and lacking in probity to require admission under the Fifth and Sixth Amendments. *United States v. Eagle Thunder*, 893 F.2d 950, 954 (8th Cir.1990); *United States v. Azure*, 845 F.2d 1503, 1505–6 (8th Cir.1988); *Shaw I*, 824 F.2d at 607–08. *See also Freeman v. Erickson*, 4 F.3d 675, 677–79 (8th Cir.1993) (evidence of victim's past sexual conduct with a third party named "Andy" was inadmissible where defendant was unable to show that sexual relationship was recent), *cert. denied,* —— U.S. ——, 114 S.Ct. 1084, 127 L.Ed.2d 400 (1994); *Bear Stops*, 997 F.2d at 454, 457 (evidence of sexual assault which occurred during the same year as the acts charged held "constitutionally required" to be admitted); *United States v. Torres,* 937 F.2d at 1474–75 (evidence of alleged molestation of victim's half-sisters by victim's natural father eight to ten years earlier held inadmissible because too collateral and remote to be probative); *United States v. Begay*, 937 F.2d at 521 (evidence that victim had sexual intercourse with a third party named "Jim" several months before the charged incident held admissible).

In any event, legitimate interests existed which justified excluding evidence of S.A.'s alleged anal intercourse with Clifford. First, if such evidence had been admitted, intimate details of S.A.'s private life would have been subject to public scrutiny and examination.

S.A., like any other juvenile and rape victim, clearly had a strong privacy interest at stake which required protection from harassing and embarrassing allegations, allegations she flatly denied and ones that were contradicted and largely uncorroborated.

Second, the Government had a legitimate interest in encouraging rape victims like S.A. to report rapes and sexual assaults and at the same time limit embarrassing and harassing trial inquiry into the victim's past sexual conduct. Generally, a rape victim has two incentives not to report: (1) to avoid harassing questions; and (2) to avoid making public acts that were intended to be private. Both of these incentives appear to apply to the instant case.[17]

The limited interest in encouraging reporting, however, would not in and of itself outweigh Shaw's interest in presenting relevant evidence. Nevertheless, this interest is one that must be considered along with other legitimate interests in determining whether a victim's alleged sexual conduct should be admitted.

The interests in this case go beyond that of merely protecting S.A. Of significantly more import are the concerns, intrinsic to the truth-finding process itself, that introducing the evidence of S.A.'s alleged acts of anal intercourse with Clifford would confuse the issues and unduly prejudice the jury. Introducing such evidence would necessarily also result in the introduction of several previous incidents of sexual relations with others, all of which were controverted and, with one exception, remote in time to the charged acts. A jury could easily be impacted by this evidence and led to base its decision on irrelevant or highly prejudicial and inflammatory "facts".

Indeed, if the jury had considered such evidence, it could have felt hostility for S.A., seen her as a sexually promiscuous girl, and based its decision on its own hostile feelings

---

**16.** In reviewing Clifford's testimony, it appears that the acts of anal intercourse took place over a period of approximately three years and not solely in 1982. Evid.Hrg.Tr. 12, 15–16, 19–20, 28–29. Likness' testimony, that as a female matures, her hymen naturally opens up and widens, *see Shaw I*, 824 F.2d at 605, merely underscores this Court's view that the anal intercourse evidence was too remote in time and raised collateral issues which substantially reduced the probative value and overall reliability of the evidence.

**17.** That is, assuming, of course, that the prior sex acts testified to by Clifford and the other boys did in fact take place.

and perceptions rather than on the actual facts of the case. The proffered evidence was particularly prejudicial because it showed that S.A. willingly had sexual relations beginning at age seven and that she did so with several young boys, some of whom were substantially older than her. Because many people consider juvenile prostitution and promiscuity, especially among girls who are as young as seven years old, to be particularly offensive, there was a significant possibility that jurors would see S.A. in a negative light and require her to disprove the validity of the sexual conduct allegations. These and other considerations make clear that the risk of confusion and prejudice to both S.A. and the Government was substantial and far outweighed the probative value and any corresponding constitutional right to present such evidence.[18] *See Bear Stops,* 997 F.2d at 454–58; *United States v. Eagle Thunder,* 893 F.2d at 954; *United States v. Duran,* 886 F.2d at 168–70; *United States v. Bartlett,* 856 F.2d 1071, 1088–89 (8th Cir.1988); *United States v. Azure,* 845 F.2d at 1505–06. Because the evidence was not admissible at trial, Shaw cannot succeed in showing that Whiting's acts or omissions so seriously prejudiced him that he was deprived of a fair trial and a reliable verdict. *See Strickland,* 466 U.S. at 687, 691–96, 104 S.Ct. at 2064, 2066–69; *Lockhart v. Fretwell,* —— U.S. at ——––––, 113 S.Ct. at 842–44. Accordingly, his ineffective assistance of counsel claim, premised on the admissibility of Clifford's alleged anal intercourse with S.A., is without merit and must be rejected.

(ii) John Ford.

Ford, like Clifford, is a nephew of Shaw. Evid.Hrg.Tr. 38. Ford was born on June 12, 1968 (*id.* at 50), and is four years older than S.A., *id.* at 314. He testified that he had vaginal intercourse or at least what he thought was vaginal intercourse with S.A. between 1979 and 1981 (when he was eleven to thirteen years old and S.A. was seven to nine years of age) on at least five but no more than twelve occasions. *Id.* at 40, 50–56. Although he was not sure, Ford thought he penetrated S.A.'s vagina at least once but at no time ever ejaculated. *Id.* at 40, 42, 53–54, 62–64. Ford believed that what little penis he had at the time was erect when he penetrated S.A. (*id.* at 40, 62–64), but never observed any vaginal bleeding, *id.* at 54.

Ford also testified that he met with and talked to Whiting on two occasions prior to the trial and that he told Whiting "[a]bout the same things" as he disclosed in his evidentiary hearing testimony. Evid.Hrg.Tr. 45. In his second Rule 412 Motion, Whiting represented that Ford would testify that he (Ford) had sexual intercourse with S.A. in 1982, before Christmas in 1984 and in February, 1985. R. 46. Whiting testified that he made these representations based on his conversations with Ford and others. Evid. Hrg.Tr. 131–33. Ford, however, testified consistently that the acts of sexual intercourse took place between 1979 and 1981 and that he never had sexual relations with S.A. after he moved from St. Francis, South Dakota to Kilgore, Nebraska in the summer of 1982. *Id.* at 50–53, 56, 58–59, 131–33. S.A.

---

18. The Court did not find Clifford or his testimony to be very credible. The testimony was inconsistent with what he had told Whiting prior to trial. Whiting testified that had Clifford or any of the other boys he interviewed told him that they had oral sex, anal penetration or other types of sexual contact with S.A. other than sexual intercourse, he would have included this information in his second Rule 412 Motion. Evid. Hrg.Tr. 133–34. A review of the offer of proof portion of the second Motion reveals that the sexual misconduct allegations involving S.A., Clifford and the other boys are very detailed but do not include a reference to any acts of anal intercourse between S.A. and Clifford. R. 46. Similarly, Clifford testified that he had anal intercourse with S.A. because vaginal intercourse was too difficult and painful for her. He further

testified that he anally penetrated S.A. at least five and perhaps as many as ten times (Evid. Hrg.Tr. 9–11, 27–28), and that she never cried when he did so, Evid.Hrg.Tr. 19–20. At trial, Likness testified S.A. had told him that Shaw had attempted unsuccessfully to penetrate her rectally on four or five occasions. T.Tr. 646; *see also* T. Tr. 383–84. According to Likness, S.A. described these attempts as being painful and events that made her cry. *Id.; see also* T. Tr. 91–97. The real purpose of Clifford's testimony appears to be to impeach S.A.'s testimony. The Eighth Circuit, however, has made it clear that a rape victim's prior sexual experiences are not admissible for impeachment purposes. *Bear Stops,* 997 F.2d at 458; *Eagle Thunder,* 893 F.2d at 954; *United States v. Bartlett,* 856 F.2d 1071, 1087–89 (8th Cir.1988); *Azure,* 845 F.2d at 1506.

denied she ever had any sexual contact at any time with Ford. *Id.* at 295.

Many of the reasons already discussed for excluding the sexual conduct evidence involving S.A. and Clifford apply with equal force to the sex acts Ford contends he had with S.A. Although, unlike the anal intercourse evidence, the alleged sex acts involving S.A. and Ford were similar in nature to the charged acts, nonetheless, these acts, like the anal intercourse acts, were remote in time in relation to the charged acts. In fact, Ford's alleged intercourse with S.A. is at least one year *more* remote in time (1979–81) than the supposed anal intercourse acts Clifford had with S.A. (1979–82). In view of the fact that Ford's conduct with S.A., if in fact the same did occur,[19] took place as many as five to six years and not less than three years before the carnal knowledge offenses charged in the indictment, this conduct, while perhaps relevant, was too remote and collateral to be admissible and was substantially outweighed by the danger of unfair prejudice and confusion of the issues. *Ante* at 1277–78.

It appears that S.A. and the Government had the same legitimate interests at stake with regard to the alleged vaginal intercourse between Ford and S.A. as it had with the anal intercourse between Clifford and S.A. and that the same dangers of confusion of the issues and unfair prejudice existed as well. On the other side of the balance, however, the proffered evidence concerning Ford's purported intercourse with S.A. had more probity than the evidence involving Clifford and S.A., especially in light of the Supreme Court's decisions in *Olden v. Kentucky*, 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988); *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 and *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347. Yet, when the proffered evidence is viewed in the context of the entire case, its probative value diminishes to the point where its probity is outweighed by the dangers of confusion and unfair prejudice.

Preliminarily, even assuming that Ford did penetrate S.A.'s vagina,[20] nevertheless, no proof was ever offered that Ford caused or was able to cause, given his age and penis size, S.A.'s hymen to become widened. It is conceivable, as Werpy and Likness observed in their trial testimony, that S.A.'s hymenal ring was never penetrated so as to stretch the ring T.Tr. 374, 386–87, 395–97, 400–01, 404, or alternatively, that her widened hymen was caused by normal growth and maturation, *Shaw I*, 824 F.2d at 605.

Furthermore, the proffered evidence was inconsistent with Shaw's theory of what happened and could have been potentially detrimental to his defense. When asked by Whiting on cross-examination whether S.A. could have had sexual intercourse with a man having a normal adult-sized penis, Kalblinger responded in the affirmative. T.Tr. 311–12. To rebut Kalblinger's testimony, Shaw presented the testimony of Werpy, who opined that S.A.'s hymen was intact when he examined her in August, 1985 and that she could not have been penetrated by a man with a normal adult-sized penis. *Id.* at 374; *see also id.* at 246. Werpy then went one step further and opined, based on his examinations of both S.A. and Shaw, that Shaw could not have had sexual intercourse with S.A. *Id.* at 377–78. This conflict between the testimony of Kalblinger and Werpy did not, in this Court's view, give Shaw sufficient cause to present the testimony of Ford or other teenage boys on the collateral issue of whether he/they had sexual relations with S.A., as many as five or six years before the offenses charged. Such testimony would not only have been inconsistent with Shaw's defense, proffered through both himself and Werpy, that S.A. had not engaged in sexual intercourse with Shaw or anyone else, but also would have been difficult to explain and persuade the jury to adopt. Indeed, had the

---

**19.** This Court did not find Ford's testimony to be overly credible. The Court found troubling the "facts" Ford gave to Whiting before trial (which are reflected in Whiting's second Rule 412 Motion) and the "facts" Ford testified to at the evidentiary hearing. These glaring inconsistencies severely detracted from Ford's credibility and the overall reliability of his testimony.

**20.** Ford was somewhat ambivalent on this point, initially testifying that he "attempted" to penetrate S.A. (Evid.Hrg.Tr. 40), then saying that he "could have" penetrated her vagina with his penis (*id.* at 42), later saying that he was not "really positive" he actually penetrated her (*id.* at 54), and then finally saying that he did put his penis in her vagina and penetrate her, *id.* at 62–64.

proffered evidence been admitted, Shaw would have been faced with arguing that he could not have had sexual intercourse with S.A. because she had an intact hymen and, at the same time, arguing that the source of S.A.'s widened hymen was someone other than himself.

Moreover, the proffered evidence that Ford and other young boys had sexual relations with S.A. would have flatly contradicted Shaw's explanation, in response to Buck and Likness' testimony, that S.A.'s hymen was not intact. Significantly, both before and during trial, Shaw claimed that the young age of the boys meant that they "apparently did not have full penetration because their penis[es] [were] such a size that [they] did not rupture the hymen of the alleged victim." R. 46, ¶ 8; see also, T.Tr. 246, 692–94; Evid. Hrg.Tr. 131, 133. It therefore appears that Shaw's purpose in offering evidence of S.A.'s alleged escapades with Ford and the other boys was to impermissibly present evidence of S.A.'s past sexual behavior without showing that someone other than himself was the source of S.A.'s widened hymen.

Shaw offered Werpy's testimony in an attempt to show that because S.A.'s hymen was intact, he could not have had sexual intercourse with her. If Shaw intended to offer the sexual misconduct evidence of Ford and the other boys to show an alternative source of S.A.'s widened hymen, he contradicted his own theory of defense and would have damaged his credibility with the jury. If, on the other hand, the evidence was offered to show that Ford and the other boys had intercourse with S.A. without penetrating her hymen because of their penis sizes, its purpose and effect was to show that S.A. was a juvenile tramp who had no morals. In either case, Shaw was not prejudiced to the extent that his trial and the verdict rendered were fundamentally unfair or unreliable. Inasmuch as Whiting's conduct with respect to the purported sexual relations between Ford and S.A. deprived Shaw of neither a fair trial nor any specific constitutional right designed to guarantee a fair trial, he suffered no prejudice and cannot prevail in this portion of his ineffective assistance of counsel claim.

### (iii) Gene Rangel.

Rangel, whose date of birth is April 24, 1968, is approximately four and one-half years older than S.A. (Evid.Hrg.Tr. 94, 314), and is the best friend of Shaw's nephew, Ford, id. at 70, 84. Rangel testified that he first met S.A. (who was eleven years old at the time), in the summer of 1984 at a house party hosted by Charles Red Crow. Id. at 71, 73, 84, 88–90. According to Rangel, during the course of the party, S.A. gave him a "blow job" (id. at 73–74), and started to have vaginal sexual intercourse with her but was interrupted, id. at 74–75, 92, 95–96, 100. He maintained that he did penetrate S.A. during the short interlude with her but acknowledged that he never had an erection and never ejaculated. Id. at 75, 96, 108. Rangel also admitted that he had drunk three or four quarts of beer, a glass each of whiskey and everclear mixed with orange juice during the party, and had smoked marijuana before the party. Id. at 92–94, 108–09.

Although Rangel's alleged escapades with S.A. were similar to and occurred during the same general time frame as the charged offenses, the escapades were nonetheless inadmissible for many of the same reasons already discussed in the sections pertaining to Clifford and Ford.[21] See ante at 1276–80.

---

21. Shaw argues that S.A.'s alleged sex acts with Clifford, Ford and Rangel were "constitutionally required" to be admitted based on Likness' testimony concerning the sexual experiences S.A. related she had with Shaw and Likness' findings and conclusions relating to whether S.A. was sexually abused. Yet it must be remembered that Likness' testimony was elicited only after Shaw offered, in his case in chief, evidence that he did not and could not have had sexual intercourse with S.A. (i.e., that he was not the "source" of the carnal knowledge acts charged in the indictment.) T.Tr. 374, 377–78, 400–01. A trial court in a criminal case is given much more discretion and latitude over the cross-examination of the government's rebuttal witnesses

and over surrebuttal testimony pertaining to collateral matters than it is given over witnesses called by the government in its case in chief who testify about matters relevant to the criminal offense(s) charged. See, e.g., United States ex rel. Ashford v. Director, Illinois Department of Corrections, 871 F.2d 680, 683 (7th Cir.1989); see also, Tague v. Richards, 3 F.3d at 1138. Furthermore, as Whiting was able to point out on cross-examination, Likness saw S.A. approximately ten months after the latest charged offense and did not know what her vaginal orifice looked like in August, 1985 or prior thereto. Id. at 671, 673, 676–77. More importantly, Clifford, Ford and Rangel testified that they never ejaculated during

There are, however, additional reasons why the alleged incident involving Rangel and S.A. was not admissible to provide an alternative explanation for S.A.'s widened hymen.

At the outset, the purported "blow job" S.A. gave Rangel does nothing to show that someone other than Shaw had sexual intercourse with S.A. or otherwise caused S.A.'s hymen to widen. Instead, such evidence is designed more to inflame the passions of the jury, portray S.A. as a slut and, more importantly, embarrass and harass her and prejudice the prosecution's right to a fair trial.

The sexual intercourse Rangel supposedly engaged in with S.A., however, is a closer issue. The fact that Rangel never had an erection or ejaculated during the alleged act of intercourse makes it unlikely that S.A.'s hymenal ring was even penetrated or, if penetrated, was done so in such a manner as to cause the ring to become widened. Shaw has made no showing that a teenage boy who penetrates a twelve-year-old girl's vagina with a non-erect penis is just as likely to stretch and permanently widen the girl's hymenal ring as a teenage boy who penetrates the same girl with a fully erect penis.

The fact that Rangel never had an erection makes his assertion that sexual intercourse and penetration occurred somewhat skeptical. This coupled with the fact that Rangel had consumed an enormous amount of alcohol, smoked marijuana and was heavily intox-icated at the time makes the accuracy of his version of the events even more suspect.[22]

While no doubt a somewhat closer call than the evidence sought to be admitted through Clifford and Ford, this Court believes that the proffered evidence of Rangel and S.A.'s sexual acts in the summer of 1984 would have unfairly prejudiced the trial in Shaw's favor, would have served to confuse the issues to be tried and would have infringed upon legitimate interests held by both S.A. and the Government. The probative value of the evidence is simply not heavy enough to outweigh the various considerations and interests on the other side of the balance. Therefore, regardless of whether or not the evidence was properly presented to the trial court and offered into evidence, Shaw was not prejudiced to the extent that the result reached was fundamentally unfair or unreliable, given that evidence was not admissible.

## CONCLUSION

The instant case is a close one, and one that required this Court to scour the record for answers. After doing so, the Court, mindful of the applicable precedent and rigid standards of *Strickland* and its progeny, believes that Shaw's claims must fail and that his 28 U.S.C. § 2255 Motion must be dismissed. Accordingly, based on the foregoing findings of fact and legal discussion, and pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), this Court recommends that Shaw's § 2255

---

the sexual encounters with S.A. (Evid.Hrg.Tr. 33–34, 40, 42, 50–53, 62–64, 75, 96, 108), and that S.A. never exhibited any pain or discomfort during the same, *id.* at 19–20, 41, 75–76, 110. Their testimony, therefore, would not have provided an alternative foundation for S.A.'s description to Likness of the "white, thick material" Shaw ejaculated into a towel or his shirt (T.Tr. 642, 644–45), or her description to Werpy and Likness of the abuse Shaw inflicted upon her and the pain and revulsion she suffered from Shaw's acts *id.* at 367, 383–85, 640–41, 643, 646–48, 653, 655, 662, 669. Instead, the testimony shows that Shaw would have had a difficult time in establishing the requisite "factual basis" sufficient to admit the proffered evidence under Rule 412(b)(1) and any other subsection thereof.

**22.** Of the three boys (now men) who testified, Rangel was by far the least credible. Rangel admitted that he told FBI agent Ronald Rawalt, who interviewed him in September, 1994, that he was supposed to testify to make it look like S.A. was "running around" or a slut. Evid.Hrg. Tr. 83, 230. Rangel never told Rawalt that S.A. had given him a "blow job". *Id.* at 95, 239–40. Nor did Rangel tell Whiting about the so-called "blow job" S.A. gave him. *Id.* at 104. Whiting's second Rule 412 Motion discussed the sexual intercourse event which supposedly occurred in the summer of 1984 but makes no reference to Rangel receiving a "blow job" as a predicate to or during the course of the act of intercourse. R. 46. Red Crow testified that he had never seen Rangel before, denied that he ever had a party during the summer of 1984 as Rangel maintained, and added that he would never have invited Rangel to such a party. *Id.* at 250–52, 257–58. Finally, S.A. denied she ever had sexual contact with Rangel or had ever seen or met him before. *Id.* at 299–300. These examples, and others not enumerated herein, plainly demonstrate that Rangel was not a credible witness who presented testimony worthy of belief that should have been admitted at trial.

Motion be dismissed in its entirety on the merits and with prejudice.

Dated this 30th day of December, 1994, at Pierre, South Dakota.